'08 CIV 5463

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENTRIFUGAL FORCE, INC. doing business as WISE CHOICE SOFTWARE, | Case No.: _____ |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| SOFTNET COMMUNICATION, INC., ISM SOFTWARE, MICHAEL MARDKHA individually, BENY SOFER, INC., and BENY SOFER individually, | |
| Defendants. | |



JURY TRIAL DEMANDED

RECEIVED
JUN 17 2008
U.S.D.C. S.D. N.Y.
CASHIERS

CODISPOTI & MANCINELLI, LLP
Steven Mancinelli (SM0208)
111 John Street, Suite 800
New York, NY 10038
Phone: 212-962-6525
Fax: 212-962-6791

*Attorneys for Plaintiff Centrifugal Software, Inc.*

# Table of Contents

I.   NATURE OF ACTION ........................................................................................... 1

II.  JURISDICTION AND VENUE ............................................................................. 2

III. THE PARTIES ....................................................................................................... 3

Plaintiff Centrifugal Force, Inc. ............................................................................. 3

Defendant Softnet Communication, Inc. ................................................................ 3

ISM Software .......................................................................................................... 4

Defendant Michael Mardkha and ISM Software .................................................... 6

Defendant Beny Sofer, Inc. and Beny Sofer ........................................................... 7

IV.  BACKGROUND FACTS ....................................................................................... 8

Plaintiff's Original Business Management Software ............................................... 8

Defendant Mardkha's Long Relationship with Plaintiff ......................................... 12

The Infringing Conduct of Defendants Softnet, ISM and Mardkha ....................... 14

The Infringing Conduct of Defendants Beny Sofer Inc. and Beny Sofer ................ 27

COUNT I: ............................................................................................................... 30
COPYRIGHT INFRINGEMENT AND/OR CONTRIBUTORY INFRINGEMENT OF
DEFENDANTS SOFTNET, ISM AND MARDKHA IN VIOLATION OF 17 U.S.C. §§ 106 and
501 AS TO THE INFRINGING JAGSYS PROGRAM

COUNT II: .............................................................................................................. 33
COPYRIGHT INFRINGEMENT OF DEFENDANTS SOFTNET, ISM AND MARDKHA IN
VIOLATION OF 17 U.S.C. §106(2) AS TO THE INFRINGING DERIVATIVE FABSYS
SOFTWARE PROGRAM

COUNT III: .............................................................................................................. 36
COPYRIGHT INFRINGEMENT OF DEFENDANTS SOFTNET, ISM AND MARDKHA IN
VIOLATION OF 17 U.S.C. §106(2) AS TO THE INFRINGING DERIVATIVE RACSYS
SOFTWARE PROGRAM

COUNT IV: ........................................................................................................................... 38
COPYRIGHT INFRINGEMENT AND/OR CONTRIBUTORY INFRINGEMENT OF
DEFENDANTS BENY SOFER INC. AND BENY SOFER IN VIOLATION OF 17 U.S.C.
§106(2) and 501 AS TO THE INFRINGING JAGSYS PROGRAM

COUNT V:............................................................................................................................ 40
FALSE COPYRIGHT MANAGEMENT INFORMATION AS TO DEFENDANTS SOFTNET,
ISM AND MARKKHA IN VIOLATION OF 17 U.S.C. § 1202

COUNT VI: ........................................................................................................................... 41
CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS AS TO DEFENDANTS
SOFTNET, ISM AND MARKKHA IN VIOLATION OF 17 U.S.C. § 1201

COUNT VII:.......................................................................................................................... 43
TRADEMARK INFRINGEMENT AS TO DEFENDANTS SOFTNET, ISM AND MARDKHA
IN VIOLATION OF 15 U.S.C. §1117

COUNT VIII:......................................................................................................................... 44
FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a) AS TO
DEFENDANTS SOFTNET, ISM AND MARDKHA

COUNT IX: ........................................................................................................................... 45
COMMON LAW UNFAIR COMPETITION AND UNJUST ENRICHMENT AT COMMON
LAW AS TO ALL DEFENDANTS

COUNT X:............................................................................................................................. 47
BREACH OF CONTRACT AS TO ALL DEFENDANTS

COUNT XI............................................................................................................................. 48
TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AS TO DEFENDANTS
SOFTNET, ISM AND MARDKHA

COUNT XII: .......................................................................................................................... 50
DECPETIVE TRADE PRACTICES

PRAYER FOR RELIEF ........................................................................................................ 51

JURY DEMAND ................................................................................................................... 55

**Table of Exhibits**

| Exhibit | Contents |
|---------|----------|
| Exhibit A | WISE CHOICE SOFTWARE® Certificate of Copyright Registration |
| Exhibit B | RIGHTCLICK® Certificate of Copyright Registration |
| Exhibit C | INVENTORY TRACKER Certificate of Copyright Registration |
| Exhibit D | Commercial Popularity of RIGHTCLICK® |
| Exhibit E | Certificates of Trademark Registration |
| Exhibit F | RIGHTCLICK® License Agreements 2005 |
| Exhibit G | 2002 and 2006 Versions of the Standard Click License Agreements from RIGHTCLICK® |
| Exhibit H | Mardkha-Glickstein E-mail Correspondence |
| Exhibit I | Softnet Proposal to Diamond Direct |
| Exhibit J | Weinreich E-mail |
| Exhibit K | Report by Alok Choudhary |
| Exhibit L | Global Digital Forensics – File Comparison Search Report on RightClick photo data in Jagsys |
| Exhibit M | Global Digital Forensics – File Comparison Search Report on CFI related terms in Jagsys |
| Exhibit N | Jagsys Copyright Notice |
| Exhibit O | Jagsys User Login Records |
| Exhibit P | Job Bag Report Comparison |
| Exhibit Q | Jewelry Pricing Chart Comparison |

Exhibit R                          Catalog Maker Screens and Chart Output
                                   Comparison

Exhibit S                          Screenshots for the Catalog Maker Reports
                                   for "Joe's Jewelry, Inc."

Exhibit S-1                        Catalog Maker Report in Jagsys

Exhibit S-2                        Catalog Maker Report in RIGHTCLICK®

Exhibit T                          Sofer Wise Choice Work Order –
                                   January 3, 2003

Exhibit U                          Sofer Order Form and License Agreement
                                   January 22, 2004

Exhibit V                          Sofer Signed CFI License Agreement –
                                   October 20, 2005

Exhibit W                          ISM Software "Products" Webpage

Exhibit X                          Screenshot from Jagsys Database – Beny Sofer
                                   certificate reference search

Exhibit Y                          Custom Report Comparison

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTRIFUGAL FORCE, INC. doing business as WISE CHOICE SOFTWARE,<br><br>                                    Plaintiff,<br><br>                  -against-<br><br>SOFTNET COMMUNICATION, INC., MICHAEL MARDKHA individually and doing business as ISM SOFTWARE, BENY SOFER, INC., and BENY SOFER individually,<br><br>                            Defendants. | Case No.: _____<br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff CENTRIFUGAL FORCE, INC. doing business as WISE CHOICE SOFTWARE, by and through their attorneys Codispoti & Mancinelli, LLP, by this Complaint against third-party defendants SOFTNET COMMUNICATIONS, INC. doing business as ISM SOFTWARE (hereafter "Softnet"), MICHAEL MARDKHA individually (hereafter "Mardkha"), BENY SOFER, INC. (hereinafter "BSI") and BENY SOFER individually (hereinafter "Sofer") (collectively the "Defendants"), allege as follows:

I.      **NATURE OF ACTION**

1.      Defendants have engaged in a pattern of conduct, to the benefit of defendants and to the detriment of plaintiff, by the unauthorized copying, reproduction, distribution and sale of computer software that was copied from and infringes plaintiff's original and copyrighted work and infringement of plaintiff's registered trademark.  This is an action for violations by

1

Defendants of federal law and related state law, for which plaintiff seeks herein to recover damages and to enjoin the unlawful conduct of the defendants, namely:

i.   Infringement of plaintiff's original computer software in violation of plaintiff's registered copyright in and to such work under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.;

ii.   Violation of the anti-circumvention prohibitions under the Digital Millennium Copyright Act, 17 U.S.C. § 1201;

iii.   Violation of the copyright management information provision of the Copyright Act, 17, U.S.C. § 1202;

iv.   Claims of trademark infringement and false designation of origin under the U.S. Trademark Act, 15 U.S.C. § 1117 and § 1125(a); and

v.   Related claims at common law and under the laws of the State of New York for misappropriation and unjust enrichment, breach of contract with respect to software licenses, and tortious interference with contractual relations.

## II.    JURISDICTION AND VENUE

2.      This action arises on claims under the copyright laws of the United States, Title XVII of the United States Code ("U.S.C."), and for violations of the U.S. Trademark Act, 15 U.S.C. § 1125, so as to form a case or controversy within the meaning of Article III of the United States Constitution.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. § 1367.

2

4.    Personal jurisdiction and venue is proper in this district under 28 U.S.C. § 1391(b) as the defendants are physically present and regularly transact business in the State of New York and in this Judicial District.

## III.    THE PARTIES
### Plaintiff Centrifugal Force, Inc.

5.    Plaintiff Centrifugal Force, Inc. doing business as Wise Choice Software (hereafter "CFI"), is a corporation organized and existing under the laws of the State of New York, being incorporated in May 1988, with its principal offices located at 1180 Avenue of the Americas, Suite 1950, New York, NY 10036.

6.    Plaintiff's assumed business name, Wise Choice Software, is duly recorded with the New York Secretary of State.

7.    Plaintiff CFI creates, develops, markets and sells original software for commercial use rather than for general consumers.

8.    Plaintiff's software are original, proprietary business management programs, designed particularly for businesses in the textile and in the jewelry and gem industries but are also adaptable for other commercial areas.

### Defendant Softnet Communication, Inc.

9.    Softnet Communication, Inc. (hereinafter "Softnet") is a corporation organized and existing under the laws of the State of New York, being incorporated in April 1985, with its principal offices located at 144 West 27th Street, Unit 8R, New York NY 10036.  Softnet is a computer services company working in the area of computer systems hardware setup, networking and computer related communications with an emphasis on services for local area networks (LAN) and wide area networks (WAN).

10.     Softnet presents itself and markets its services through its website at the Internet address www.snci.net.

11.     Upon information and belief, defendant Softnet and/or Michael Mardkha, through its ISM Software division/alter ego (see below), has developed, marketed and sold software programs for commercial use, rather than for general consumers, under the following brand names:

     i.   "Jagsys" – a business management program for the jewelry and gemstone businesses;

    ii.   "Fabsys" – a business management program for the fabric businesses; and

   iii.   "Racsys" – a business management program for the rug and carpet businesses.

12.     Defendant's software programs – namely, Jagsys, Fabsys and Racsys – are infringing knockoffs of Plaintiff's original RIGHTCLICK® program.


**ISM Software**

13.     Upon information and belief, defendant ISM Software ("ISM") is an unincorporated business enterprise operating within the same offices as defendant Softnet and defendant MICHAEL MARDKHA (see below) at 144 West 27th Street, Unit 8R, New York NY 10036.

14.     Upon information and belief, ISM is an unincorporated division or assumed/fictitious business name of defendant Softnet, and as such is indistinct from and shares the same identity as the corporate defendant Softnet.

15.     In the alternative and upon information and belief, ISM is an unincorporated business enterprise of defendant MICHAEL MARDKHA doing business as ISM and, as such, is

directed, controlled and/or owned by Michael Mardkha who is responsible for the actions and activities of ISM, and is the recipient of the profits and benefits received by ISM.

16.    In the alternative and upon information and belief, ISM is a wholly owned subsidiary of Softnet, shares the same chief executive officer/principal as Softnet, namely Michael Mardkha, and is located at the same address and offices as corporate defendant Softnet, which is also the residence of Michael Mardkha.

17.    Upon information and belief, ISM is merely the alter ego of Softnet and/or Mardkha is not an independent enterprise responsible for its own actions separate and apart from the direction and control of Softnet and/or Mardkha.

18.    ISM presents and markets its services and products through a website at the Internet address www.ismsoftware.com.

19.    Upon information and belief, ISM has developed, marketed and sold software programs for commercial use, rather than for general consumers, under the following brand names:

     i.    "Jagsys" – a business management program for the jewelry and gemstone businesses;

    ii.    "Fabsys" – a business management program for the fabric businesses; and

    iii.    "Racsys" – a business management program for the rug and carpet businesses.

20.    Defendant's software programs – namely, Jagsys, Fabsys and Racsys – are infringing knockoffs of Plaintiff's original RIGHTCLICK® program.

**Defendant Michael Mardkha and ISM Software**

21.    Defendant MICHAEL MARDKHA (hereinafter "Mardkha") is a resident of the State of New York and resides at 144 West 27th Street, Unit 8R, New York NY 10036.

22.    Upon information and belief, Mardkha is the chief executive officer and the sole shareholder of corporate defendant Softnet and, as such, directs and is responsible for the actions and activities of corporate defendant Softnet and is the recipient of the profits and benefits received by Softnet.

23.    Upon information and belief, Mardkha also does business as ISM SOFTWARE and/or is the director, principal and/or owner of ISM and, as such, directs and is responsible for the actions and activities of ISM, and is the recipient of the profits and benefits received by ISM.

24.    Upon information and belief, defendant Mardkha's residence, noted in ¶ 21 above, is also the offices of defendants Softnet and ISM.

25.    Upon information and belief, Mardkha has knowledge and expertise in computer information technology and in particular computer systems and networking, including local area networks (LAN) and wide area networks (WAN) and provides services to customers of Softnet in the fields of computer information technology and computer networking.

26.    Plaintiff and Mardkha have had a long history together.  Since approximately 1994 Plaintiff has often referred its customers to Mardkha for computer hardware and networking related services and Mardkha has personally known Derek Glickstein (hereinafter "Glickstein"), the founder and principal of plaintiff CFI, since at least as early as 1987.

27.    Mardkha and defendant Softnet were also resellers for Plaintiff, selling Plaintiff's software products since approximately 1994 to commercial users in the jewelry industry and carpet/rug industry.

28.    Mardkha, through his business enterprise ISM, has developed, marketed, sold and continues to sell software programs for commercial use, rather than for general consumers, under the following brand names:

    i.    "Jagsys" – a business management program for the jewelry and gemstone businesses;

    ii.    "Fabsys" – a business management program for the fabric businesses; and

    iii.    "Racsys" – a business management program for the rug and carpet businesses.

29.    Defendant's software programs – namely, Jagsys, Fabsys and Racsys – are infringing knockoffs of Plaintiff's original RIGHTCLICK® program

### **Defendant Beny Sofer, Inc. and Beny Sofer**

30.    Upon information and belief, defendant BENY SOFER, INC. (hereinafter "BSI") is a corporation organized and existing under the laws of the State of New York with offices at 587 Fifth Avenue, 9th Floor, New York, NY 10017, and is a diamond and jewelry dealer in New York City's diamond district.

31.    Upon information and belief, defendant Beny Sofer (hereinafter "Sofer") resides at 530 East 72nd Street, Apt. 20-C, New York, NY 10021, and is the chief executive officer and principal of corporate defendant BSI and, as such, directs and is responsible for the actions and activities of corporate defendant BSI and is the recipient of the profits and benefits received by BSI.

32.    BSI and Sofer are former customers of plaintiff CFI, having purchased and used Plaintiff's software products, purchased software customizations from Plaintiff and subscribed to

Plaintiff's software maintenance services from on or about November 1994 through October 2006.

## IV.    BACKGROUND FACTS

### Plaintiff's Original Business Management Software

33.    In 1986 Glickstein began writing a DOS-based business management software program, targeting the textile and the jewelry and gem industries as the ultimate customers and users of the program.

34.    The program went through various revisions and was ultimately marketed and sold under the brand name and trademark WISE CHOICE SOFTWARE®.

35.    In 1988 Glickstein formed and incorporated plaintiff CFI for the purpose of further developing, marketing and selling the WISE CHOICE SOFTWARE® program.

36.    On March 3, 2000, the copyright for WISE CHOICE SOFTWARE® program was duly registered with the U.S. Copyright Office, Reg. No. TX5-152-204; a copy of the certificate of registration is annexed hereto as **Exhibit A**.

37.    In or about 1996, Glickstein began to rewrite and redesign the DOS-based WISE CHOICE SOFTWARE® program for use in Microsoft Corporation's Windows computer operating system.

38.    In or about 1998, CFI deployed this revised and updated program for commercial sale and use under the brand name and trademark RIGHTCLICK®®.

39.    On March 3, 2000, the copyright for RIGHTCLICK® program was duly registered with the U.S. Copyright Office, Reg. No. TX5-152-246; a copy of the certificate of registration is annexed hereto as **Exhibit B**.

40.     On July 17, 2000, the copyright for a module for the RIGHTCLICK® program,
entitled INVENTORY TRACKER, was duly registered with the U.S. Copyright Office, Reg. No.
TX5-246-539; a copy of the certificate of registration is annexed hereto as **Exhibit C**.

41.     CFI sells its original RIGHTCLICK® program in two versions – "Atlas" and
"Velocity."  "Atlas" is a comprehensive software package for jewelry wholesalers,
manufacturers, diamond/gemstone dealers, pearl dealers, contractors, finding houses, casters,
jewelry designers and other jewelry related businesses.  "Velocity" is a smaller software package
designed for jewelry businesses with one to five employees or station installations.

42.     CFI's pricing for the RIGHTCLICK® program ranges from $2,800 to $50,000,
depending on which version package (Atlas or Velocity) is purchased, the modules or options
selected and the number of workstation installations required by the customer.

43.     Additionally, CFI sells customizations to its customers based on and for the
RIGHTCLICK® program ranging from $500 to $100,000 per year, per customer. Program
customizations are alterations to the base RIGHTCLICK® program based on customer requests
and specifications.

44.     CFI also sells custom programmed systems to its customers based on the core
RIGHTCLICK® software engine and specifically tailored to the customer's business
requirements, essentially programming for the customer a one on a kind software system. With
such custom software systems, CFI invoices its customers for all time spent, including but not
limited to software design time, programming, implementation time and training with fees
ranging from $150,000 to $500,000 aggregate use per customer.

45.     Furthermore, CFI sells training to its customers on its RIGHTCLICK® products at
the hourly rate of $150.

46.     With the sale of its RIGHTCLICK® program, plaintiff CFI also markets and sells an annual user subscription maintenance service for RIGHTCLICK® customers.  In fact, a substantial portion of CFI's revenue comes from ongoing customer subscriptions for the RIGHTCLICK® maintenance service.  The annual user subscription maintenance service ranges from $1,200 to $8,000 per customer.

47.     The original WISE CHOICE SOFTWARE® and the RIGHTCLICK® programs (hereinafter collectively referred to as the "Copyrighted Programs") were designed to be open-ended and adaptable for other industry uses.  In fact, CFI developed a business management program, derived and adapted from the WISE CHOICE SOFTWARE program, for textile companies as CFI had textile companies as customers in the late 1980's and early 1990's. Mardkha at one time induced CFI to develop a version of the program for rug and carpet businesses on the promise that he could make sales of the program in that market.  CFI provided defendant Mardkha with a demo sample of this version of the program for his sales promotion. Mardkha made one sale of this version but refused to charge the one customer for ongoing telephone support, so further development was discontinued as to this version of the program.

48.     As a result of plaintiff CFI's promotion and marketing, the RIGHTCLICK® program has become a leading business management software program used by jewelry and gem businesses.  Attached hereto as **Exhibit D** are printouts of websites attesting to the commercial popularity of CFI's RIGHTCLICK® program.

49.     As a result of the recognition afforded by the relevant consuming public and its inherent distinctiveness, Plaintiff's RIGHTCLICK® trademark was registered with the U.S. Patent and Trademark Office ("USPTO") under registration no. 2255337 on March 30, 1999, and registration no. 3365025 on January 8, 2008.  Plaintiff's WISE CHOICE SOFTWARE

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

trademark was registered with the USPTO under registration no. 2416212 on March 24, 1998.

Copies of the respective certificates of trademark registration are annexed hereto as **Exhibit E.**

50.     The source code of the RIGHTCLICK® program is highly proprietary and

original to plaintiff CFI.  To secure the proprietary nature of the source code, prevent access to it

by unauthorized parties and prevent general public disclosure, CFI uses several protection

mechanisms and additionally encrypts the RIGHTCLICK® source code using a security program

called Armadillo, a commercially available software protection system.  Armadillo provides

software encryption and digital rights management ("DRM") for the user.  CFI has been using

Armadillo encryption on the RIGHTCLICK® source code since approximately in or about 2000.

51.     By encrypting the RIGHTCLICK® source code, plaintiff CFI believed that the

integrity of the RIGHTCLICK® source code would be reasonably secure from unauthorized

users, would prevent unauthorized access and copying of the source code, and thereby would

prevent competitors from developing competing software products based on CFI's own designs

in RIGHTCLICK®.  Without hacking and thereby breaching the encryption provided by the

Armadillo security program, it is not possible for unauthorized persons to access and view the

RIGHTCLICK® source code.

52.     A purchaser of the RIGHTCLICK® program must sign a standard printed license

agreement provided by CFI.  A copy of the standard RIGHTCLICK® printed license agreement

is annexed hereto **Exhibit F**.  The printed license agreement at paragraph 2 expressly provides

that:

> The SOFTWARE is the intellectual property of CFI; its structure, organization
> and source code are valuable trade secrets and confidential information of CFI.
> LICENSEE may not: (a) reverse engineer, de-compile, or disassemble the
> software or allow others to do so; (b) modify or create derivative works based
> upon the SOFTWARE in whole or in part; (c) distribute copies of the

11

SOFTWARE; (d) remove any proprietary notices or labels on the SOFTWARE; or (e) assign, resell, lease, rent, transfer, convey, license, sublicense, or otherwise transfer rights to the SOFTWARE to any affiliate, subsidiary or any other third party.

53.    By installing, accessing and using the RIGHTCLICK® program, a user/licensee (including each of the Defendants) by necessity would be required to confirm an acknowledgment of the program's click license by clicking an "I Agree" button.  The program requires this acknowledgment each time the RIGHTCLICK® program is opened.  Annexed hereto as **Exhibit G** are the text copies of the 2002 and 2006 versions of the standard click license agreements from the RIGHTCLICK® program.  The RIGHTCLICK® click licenses expressly provide that the software and all its components are the property of CFI.  The RIGHTCLICK® click licenses further expressly provide that the licensee may not: reverse engineer, de-compile or disassemble the software, modify or create derivative works based on the software in whole or in part, distribute copies of the software, remove any proprietary notices or labels on the software, or transfer any rights to the software.

### Defendant Mardkha's Long Relationship with Plaintiff

54.    As noted above, defendant Mardkha has personally known Glickstein, the founder and chief executive officer of plaintiff CFI, since at least as early as 1987 when Glickstein was first developing the prototype DOS version of his business management software program.

55.    Mardkha was impressed enough with Glickstein's early version of the WISE CHOICE SOFTWARE that he sought to buy the rights to the program from Glickstein in or about 1987.  However, the purchase price that Mardkha offered was far too inadequate and was rejected by Glickstein.

56.     In or about 1994, Mardkha and his defendant Softnet became re-sellers for

Plaintiff CFI, selling the DOS-based WISE CHOICE SOFTWARE program.  To sell the

program, Mardkha had to become familiar with its use and operation and had to install the

program on his computer.   Therefore, Mardkha had actual knowledge of and direct access to

Plaintiff's program.

57.     Mardkha and his company defendant Softnet also became a vendor to Plaintiff,

selling Plaintiff computer hardware and parts.  Between 2001 and 2003 Plaintiff purchased from

Mardkha and Softnet approximately $25,000 in computer equipment.

58.     Glickstein and plaintiff CFI believed Mardkha and his company Softnet to be

reliable vendors and thus frequently referred Mardkha and Softnet to CFI's own clients for

computer hardware acquisitions and computer networking and IT (computer information

technology) services.  Plaintiff CFI had recommended Mardkha and Softnet to at least 70% of

CFI's customers.  Not once did CFI request, seek or receive any referral fee, payment or

compensation from Mardkha or Softnet for any of the customer referrals that CFI made.

59.     In servicing Plaintiff's clients, primarily jewelry and gem businesses, Mardkha

and Softnet by necessity became familiar with the jewelry industry and the computer and

software needs of those businesses.

60.     Mardkha and Softnet were also re-sellers of Plaintiff's updated RIGHTCLICK[®]

program.  To sell the program, Mardkha had to become familiar with its use and operation and

had to install the program on his computer.  Also, in servicing Plaintiff's clients, Mardkha and

Softnet would have direct access to the RIGHTCLICK[®] program as installed on the clients'

computers.

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

61.    Email correspondence between Mardkha and Glickstein confirm that since at least as early as 1994 Mardkha has been a reseller of the Plaintiff's software programs and that he had been provided with the RIGHTCLICK® program on a CD.  Annexed hereto as **Exhibit H** are copies of said email correspondence between Mardkha and Glickstein between 1994 and 2002.

62.    Therefore, it is clear that Mardkha and defendant Softnet had direct access to and familiarity with the RIGHTCLICK® program.

## The Infringing Conduct of Defendants Softnet, ISM and Mardkha

63.    For the purposes of this particular section, ¶¶ 63 to 117 inclusive, "Defendants" shall collectively refer to defendants Softnet, ISM and Mardkha, and thereafter collectively to all the named Defendants.

64.    In or about late 2005, CFI became aware that Softnet and Mardkha were developing a business management software program for jewelry and gem businesses that would directly compete with CFI's RIGHTCLICK® program.  One of CFI's customers, Joseph Weinreich ("Weinreich") of Diamond Direct, Inc.  ("Diamond Direct"), a jewelry wholesale company, reported to Glickstein that Mardkha had been attempting to promote his new program to Diamond Direct.

65.    Glickstein personally recommended Mardkha and Softnet to Diamond Direct to take care of that company's computer and networking needs in the late 1990s.

66.    Upon information and belief, in or about October 2005, Mardkha together with an individual named Ravi Krishnan ("Krishnan") met with Weinreich and other principals of Diamond Direct, together with a Diamond Direct employee named Sankalp Trivedi, also known as "Sam," to pitch Softnet's business management software program that Mardkha and Softnet

were developing. Diamond Direct was, at that time, and continues to be a CFI customer and a RIGHTCLICK® user.

67. Upon information and belief, Krishnan was Mardkha's business partner and was present at this meeting to assist Mardkha in making a sales pitch to Diamond Direct and to ask Diamond Direct to stop using RIGHTCLICK® and switch to the business management software program that Mardkha and Softnet were developing; at this time Mardkha and Softnet were still accepting business referrals from Plaintiff CFI to provide computer network and IT services to CFI's customers.

68. Krishnan knew of and was familiar with Plaintiff CFI, Plaintiff's principal Derek Glickstein and Plaintiff's Copyrighted Programs. Krishnan was formerly the CFO of Weindling International, Plaintiff's customer of and a user of the WISE CHOICE SOFTWARE and RIGHTCLICK® programs.

69. Glickstein had personally recommended Mardkha and Softnet to Krishnan and Weindling International in the mid 1990's for service of Weindling International's computer hardware and networking needs.

70. Upon information and belief, Krishnan is currently the CFO of Gold Star Jewelry, LLC, which is also a customer of Plaintiff CFI and a user of the RIGHTCLICK® program.

71. Upon information and belief, at that meeting in October 2005 with Diamond Direct, Mardkha and/or Krishnan told Weinreich and the others present at that meeting that Softnet's software program was being developed and it would be a copy of RIGHTCLICK® down to the icon level, and that it would have the same windows and the same look and feel as RIGHTCLICK®.

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

72.     Upon information and belief, at that meeting with Diamond Direct, Mardkha and Krishnan reviewed several windows of Plaintiff's RIGHTCLICK® program installed on Diamond Direct's computer system and discussed how features from RIGHTCLICK® would be incorporated into Mardkha and Softnet's new software program.

73.     Upon information and belief, Krishnan represented at that meeting with Diamond Direct that he was a good friend of Plaintiff CFI's president, Derek Glickstein, and worked closely with Glickstein while Krishnan was employed at Weindling International.  Upon information and belief, Weinreich sarcastically commented that Krishnan must be a good friend indeed if he was going to copy Glickstein's software.

74.     Upon information and belief, at that meeting with Diamond Direct, Mardkha and Krishnan represented that they had just come from a similar meeting at Weindling International, also a CFI customer, and after Diamond Direct they would be off to meet with other CFI customers to pitch and promote their new software program.

75.     Mardkha and Krishnan pitched the Jagsys program to Weindling International, but the principals at Weindling perceived Jagsys to be a look-alike of Plaintiff's RIGHTCLICK® program and were concerned that if they purchased Jagsys that Weindling International might be infringing Plaintiff's RIGHTCLICK® program.

76.     Subsequently on or about October 11, 2005, Weinreich informed Glickstein of Mardkha and Krishnan's meeting with Diamond Direct and the substance of the discussions and occurrences that took place.

77.     Plaintiff, however, was unable to obtain, until recently, any additional information about Mardkha and Softnet's new proposed software program or an actual copy of Softnet's software program to verify any similarities with RIGHTCLICK®.

16

78.     On or about November 14, 2007, Mardkha and Softnet presented a demonstration version of Softnet's software program package, now called "Jagsys," and sent "Sam" (Sankalp Trivedi) a written proposal for Diamond Direct to purchase and adopt for use Softnet's Jagsys software program version 2.0 software package.  Mardkha specifies in the proposal that "we still maintain full compatibility with RC [RIGHTCLICK®] data…" and that compatibility from RIGHTCLICK® to Jagsys is "one way."  Annexed hereto as **Exhibit I** is a copy of Mardkha's November 14, 2007 "Proposal" to "Sam" at Diamond Direct.

79.     In or about February 2008, Plaintiff CFI discovered ISM's website www.ismsoftware.com, in which ISM markets, promotes and sells the Jagsys jewelry and gem software. The website had limited functionality and there was a hyperlink directly to defendant BSI's website at www.benysofer.com.

80.     Upon information and belief, "Sam" (Sankalp Trivedi) met with Mardkha at a jewelry and gem industry tradeshow on or about the beginning of April 2008. The meeting took place at an exhibition booth rented and staffed by Mardkha under the ISM name.  The booth was also staffed at that time by two other unknown persons.

81.     Upon information and belief, in a telephone conversation subsequent to the meeting at the tradeshow with Mardkha, "Sam" expressed concerns to Mardkha about similarities between Jagsys and RIGHTCLICK®, which prompted Mardkha to send "Sam" a follow up email in or about April 2008 directly addressing the issue of those similarities, claiming that "every bit of code of Jagsys was developed independently and there are absolutely no copyright issues whatsoever… [and that]  [t]he similarities are limited to the fact that both Jagsys and RIGHTCLICK® are inventory management systems for the Jewelry industry and there is [sic.] going to be inherent similarities."  A copy of that email was forwarded by Diamond

17

Direct's president, Joseph Weinreich, to Glickstein on May 1, 2008, and is annexed hereto as

**Exhibit J**.  Within this communication Mardkha also defamed and impugned Plaintiff and its

RIGHTCLICK® product, asserting that RIGHTCLICK® might corrupt Diamond Direct's data

and might put Diamond Direct's business in jeopardy.

83.     For the last two years Mardkha has engaged in a repeated pattern of impugning

and defaming Plaintiff and Plaintiff's RIGHTCLICK® product.  Over approximately the last two

years Plaintiff has fielded calls from irate customers complaining that Mardkha told them, when

he made services calls to those customers regarding their computer and/or network function

problems, that their systems were malfunctioning due to problems with the RIGHTCLICK®

program on their systems, when in fact the issues did not involve Plaintiff's software but

ordinary maintenance issues such as printer or network functions which gave rise to the service

call in the first instance.  Upon information and belief, Mardkha was maligning Plaintiff and

Plaintiff's product to set the stage for Mardkha to later capture Plaintiff's own customers for his

knock-off Jagsys program.

83.     Upon information and belief, defendants Softnet, ISM and/or Mardkha have

misrepresented to CFI's customers, when pitching and promoting their Jagsys program, that

transferring customer's data from CFI's RIGHTCLICK® program to Jagsys would correct the

malfunctions caused by CFI's RIGHTCLICK® program, which in fact were ordinary

maintenance computer issues such as printer or network functions.

84.     The actual reason that Defendants' Jagsys program could provide customers with

"one way" compatibility in transferring their data from CFI's RIGHTCLICK® program is

because Jagsys is essentially a replica of CFI's RIGHTCLICK® program.

85.    On or about March 10, 2008, Plaintiff discovered that Joe Menzie (hereinafter "Menzie"), a former customer of CFI, had obtained from Mardkha a demo version of Defendants' Jagsys version 2.0 program. Upon information and belief, Mardkha installed Jagsys on Menzie's laptop computer (hereinafter the "Menzie Laptop") in Menzie's office.

86.    CFI was able to acquire the Menzie Laptop intact, including the Jagsys demo program, from Menzie.  Plaintiff's counsel retained the services of an independent computer forensic specialist, Global Digital Forensics, who secured the Menzie Laptop from CFI, cloned the hard drive and locked up the original hard drive from the Menzie Laptop in their evidence vault.  A clone of the hard drive from the Menzie Laptop, including the complete copy of the Jagsys demo program, was placed back in the original Menzie Laptop, which was then sent to Plaintiff's computer expert, Dr. Alok Choudhary, for analysis.

87.    The report of Plaintiff's expert Dr. Alok Choudhary shows numerous instances of substantial similarity between Softnet's Jagsys and Plaintiff's original RIGHTCLICK®.  A copy of Dr. Choudhary's report reviewing the Jagsys version 2.0 demo and Plaintiff's RIGHTCLICK® is annexed hereto as **Exhibit K**.  Dr. Choudhary's conclusion in his report states: "these observations strongly indicate that one system (JagSys) is derived from the corresponding features from another system (RIGHTCLICK®)."

88.    In reviewing the Jagsys version 2.0 demo on the Menzie Laptop, Plaintiff discovered that the RIGHTCLICK® database structure was copied in Jagsys nearly verbatim; database names were copied from RIGHTCLICK® into Jagsys as were data field names and data fields, and copied in the same order and layout as they appear in Plaintiff's RIGHTCLICK® program.

89.    Plaintiff embedded in RIGHTCLICK® a set of fictitious data as a sample database – data which, significantly, is also present in Softnet's Jagsys version 2.0 demo.  That fictitious data could be present in Jagsys if and only if that data were copied directly from RIGHTCLICK®.

90.    Photographs of various jewelry design samples that appear in Plaintiff's RIGHTCLICK®, and which were specifically modified for use in RIGHTCLICK®, appear intact also in the Jagsys program.  In fact, the hash values in the Jagsys data files for these jewelry images indicate that the source were data samples duplicated from RIGHTCLICK® versions from 2001 to 2005.  Annexed hereto as **Exhibit L** is a copy of the File Comparison report of photo images in Jagsys compiled by Global Digital Forensics, April 8, 2008 (*see also infra* at ¶ 97 and Exhibit S).

91.    A search of the file structure of the Jagsys version 2.0 demo installed on the Menzie Laptop disclosed hundreds of line references concerning Plaintiff, specifically citing "Centrifugal," "CFI," "Wise Choice Software," "RightClick," and CFI's "Atlas" and "Velocity." Such specific and explicit line references in Softnet's Jagsys could only occur if large sections of CFI's proprietary code were copied directly out of RIGHTCLICK®.  Annexed hereto as **Exhibit M** is a copy of the search report performed on Jagsys for query terms "Centrifugal," "CFI," "Wise Choice Software," "RightClick," "Atlas" and "Velocity," compiled by Global Digital Forensics, April 8, 2008.

92.    The entire Usage Agreement in Jagsys is verbatim identical with the Usage Agreement in RIGHTCLICK®.  The copyright notice in Jagsys even includes the specific reference to "Wise Choice Software," Plaintiff's trade name and registered trademark:

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

"COPYRIGHT (c) 1987-2000 Centrifugal Force, Incorporated/Wise Choice Software All Rights Reserved. JAGSYS and Wise Choice Software are registered trademarks of Centrifugal Force, Inc."

Clearly JAGSYS is not a registered trademark of Plaintiff CFI. Defendants' addition of "JAGSYS" to the copyright notice violates Plaintiff's copyright management information. Softnet has been promoting, marketing, offering to sell and selling a software program that, at the least, is either illegitimately copied from and/or is illegitimately attributed to Plaintiff CFI. Annexed hereto as **Exhibit N** is a copy of the copyright notice in Defendants' Jagsys program.

93.     The user login records within the Jagsys program, located in the Jagsys "User Access" file within the program at "jagsys.dbo.access," show numerous login records for "DGLICKSTEIN" going back to 2002. "DGLICKSTEIN" is Derek Glickstein, president of Plaintiff CFI. The records disclosed in the "jagsys.dbo.access" file are Glickstein's RIGHTCLICK® login records, complete with Glickstein's workstation ID intact from Plaintiff CFI's internal office computer network. Glickstein's verbatim login records could only be present in Jagsys if they were copied directly out of RIGHTCLICK®. Annexed hereto as **Exhibit O** is a screenshot of the Jagsys user login records table showing "DGLICKSTEIN" login records.

94.     Numerous reports generated by Defendants' Jagsys are substantially identical to the same reports generated by Plaintiff's original RIGHTCLICK® program. One example is the jeweler's "job bag" report. Annexed hereto as **Exhibit P** are screenshots of the job bag reports generated by Plaintiff's RIGHTCLICK® and Defendants' Jagsys. Besides exhibiting the same fictitious data of the same fictitious company, A&F Trading Corp., the design and layout of the report, including the layout and placement of the various buttons, field tabs and the field names are identical.

95.    Another example of the identity of Plaintiff's original RIGHTCLICK® software and Defendants' infringing Jagsys can be seen in comparing the jewelry pricing chart in both programs.  Annexed hereto as **Exhibit Q** are screenshots of the jewelry pricing charts generated by Plaintiff's RIGHTCLICK® and Defendants' Jagsys.  With the exception of a nominal difference in the header colors, the respective reports are identical.

96.    Similarly, another example of the identity of Plaintiff's original RIGHTCLICK® software and Defendants' infringing Jagsys can be seen in comparing the Catalog Maker screens and chart output generated in both programs.  Annexed hereto as **Exhibit R** are screenshots of the Catalog Maker screens and chart output generated by Plaintiff's RIGHTCLICK® and Defendants' Jagsys.  With the exception of a nominal difference in the header colors, the respective reports are identical.

97.    The reports generated by Catalog Maker in both Defendants' Jagsys and in Plaintiff's RIGHTCLICK® – using the fictitious company and data for "Joe's Jewelry, Inc." which are found in both Defendants' Jagsys and Plaintiff's RIGHTCLICK® – are identical, including the same jewelry photos and even the same jewelry weights.  Annexed here to as **Exhibit S** are screenshots for the Catalog Maker reports for "Joe's Jewelry, Inc." in Defendants' Jagsys (**Exhibit S-1**) and in Plaintiff's RIGHTCLICK® (**Exhibit S-2**).

98.    Such virtual identity of the reports, charts, screens and tables generated in RIGHTCLICK® and those generated in Jagsys could not occur unless the form, design, structure, layout and look and feel of the reports, charts, screens and tables were copied from RIGHTCLICK® and then replicated in Jagsys.

99.     Such virtual identity of the reports, charts, screens and tables generated by the two programs could occur only if the underlying source code had also been copied from RIGHTCLICK® and inserted and/or converted into Jagsys.

100.     Since the RIGHTCLICK® source code is encrypted with the Armadillo security software, such literal and direct copying could only occur if the encryption were hacked and circumvented.  Upon information and belief, defendants Softnet and Mardkha acted in concert with others and/or actively facilitated others to breach and circumvent the security measures protecting Plaintiff's proprietary source code of the RIGHTCLICK® program.

101.     Such acts by Defendants to circumvent the security on Plaintiff's program clearly indicate that Defendants willfully, intentionally and deliberately accessed and copied Plaintiff's source code and copied and replicated the tables, reports, program structure, data, displays and look and feel of Plaintiff's Copyrighted Programs to make the infringing knockoff Jagsys program.

102.     Mardkha's claim to Diamond Direct that "every bit of code of Jagsys was developed independently and there are absolutely no copyright issues whatsoever…" is a deceitful and fraudulent statement intended to mislead a potential user of the infringing Jagsys program.  (*See* **Exhibit J**).

103.     Furthermore, by copying Plaintiff's source code into Jagsys and then installing Jagsys on multiple computers without security or encryption, as evidenced by the Jagsys demo on the Menzie Laptop, Defendants have proliferated Plaintiff's proprietary source code beyond the control of Plaintiff and the ability of Plaintiff to secure the code from access to any other third party to copy, revise, adapt and use, thereby irreparably damaging Plaintiff.

104.    Upon information and belief, Defendants' related software products, "Fabsys" for fabric businesses and "Racsys" for rug and carpet businesses, are built upon the same engine as the Jagsys program, which is essentially an infringing replication of Plaintiff's original Copyrighted Programs.  Since Defendants' Jagsys program is an infringing knockoff of Plaintiff's original programs, any derivative works based on Defendants' Jagsys program would also infringe Plaintiff's copyrights in and to Plaintiff's Copyrighted Programs.

105.    Further, in hacking and accessing Plaintiff's RIGHTCLICK® program, defendants Softnet, ISM and Mardkha would necessarily have had to install the RIGHTCLICK® program on local computers which in turn would have necessitated that they affirmatively acknowledge and agree to the click license agreement in RIGHTCLICK®.

106.    Furthermore, as an IT service provider for many of Plaintiff CFI's customers, including reselling the Copyrighted Programs and then installing it on customer computer systems, Mardkha would have to acknowledge affirmatively the click license in Plaintiff's programs.  As noted above, the click license states that a user "may not: (a) reverse engineer, de-compile, or disassemble the software or allow others to do so; (b) modify or create derivative works based upon the SOFTWARE in whole or in part; (c) distribute copies of the SOFTWARE; (d) remove any proprietary notices or labels on the SOFTWARE…."  (*See* ¶ 52).

107.    Defendants breached and violated the RIGHTCLICK® click license agreement by illegitimately circumventing Plaintiff's security, accessing the RIGHTCLICK® program, reverse engineering, de-compiling or disassembling the RIGHTCLICK® program, or allowing others to do so, modifying the RIGHTCLICK® source code, database structure, tables reports and displays and making derivative works based on RIGHTCLICK®, as well as altering the RIGHTCLICK® copyright management information in Jagsys.

108.    Accordingly and based on the foregoing, Defendants had actual knowledge of Plaintiff CFI's copyrighted programs and had direct access to them.  Defendants violated anti-circumvention prohibitions in the Copyright Act by hacking and breaching the software security on Plaintiff's RIGHTCLICK® program and infringed Plaintiff's exclusive rights in and to the copyright RIGHTCLICK® program by copying the RIGHTCLICK® program and creating a knockoff of the RIGHTCLICK® program in Defendants' Jagsys program.

109.    Defendants violated copyright information management provisions of the Copyright Act by using Plaintiff's own copyright notice with Plaintiff's trade name and registered trademark WISE CHOICE SOFTWARE in connection with Defendants' Jagsys program.

110.    Upon information and belief, Defendants knowingly copied Plaintiff's copyrighted software programs with the intent to create and did create a knock-off that substantially replicates Plaintiff's original software.

111.    Defendants had actual knowledge of Plaintiff's rights in its original programs and copyrighted works, acted willfully and with deliberate disregard of Plaintiff's rights, thereby willfully violated Plaintiff's exclusive rights in and to Plaintiff's copyrighted works.

112.    Upon information and belief, Defendants copied Plaintiff's original programs and created the infringing Jagsys program with the intent to supplant Plaintiff and Plaintiff's original software programs by marketing, promoting and selling Defendants' knock-off of Plaintiff's original RIGHTCLICK® program to Plaintiff's own customers, whom Defendants personally know and have access by virtue of Plaintiff having recommended Defendants for computer system related services.

113.    Defendants' use of Plaintiff's trade name and registered trademark on and in connection with the copyright notice in the infringing Jagsys program constitutes an infringement of Plaintiff's registered trademark and will likely confuse or deceive the consuming public in wrongfully perceiving a relationship or affiliation between Plaintiff and Defendants or an endorsement or sponsorship by Plaintiff of Defendants use, in violation of § 32 of the Trademark Act.

114.    Defendants' use of Plaintiff's trade name and registered trademark on and in connection with the infringing Jagsys program constitutes misleading and false designation of origin that is likely to confuse or deceive the consuming public, in violation of § 25(a) of the Trademark Act.

115.    For the past ten years at the least, Plaintiff CFI has been promoting, marketing and building its commercial identity and goodwill through its brand names and trademarks WISE CHOICE SOFTWARE and RIGHTCLICK® and has come to be recognized in the gem and jewelry industry as providing quality business software.

116.    Defendant's misleading use of Plaintiff's registered trademarks on their infringing Jagsys program trades on and misappropriates Plaintiff's reputation and goodwill represented by Plaintiff's brand names and trademarks.

117.    Defendants are further misleading the relevant consuming public by representing that Jagsys provides one-way compatibility with Plaintiffs' RIGHTCLICK® when in fact Jagsys is substantially derived from and is a virtually identical knockoff of Plaintiff's own RIGHTCLICK® program and constitutes deceptive trade practices, for which Defendants are liable.

**The Infringing Conduct of Defendants Beny Sofer Inc. and Beny Sofer**

118.    Beny Sofer, Inc. ("BSI") and Sofer are former customers of Plaintiff CFI and users of CFI's Copyrighted Programs and, as such, had access to and knowledge of Plaintiff's software programs.

119.    In the mid to late 1990's, Plaintiff referred BSI to Mardkha and Softnet for computer hardware and network services.

120.    On or about January 3, 2003, defendants BSI and Sofer requested a software customization from Plaintiff CFI for the creation of a customized report– called "Diamond Inventory Process Report" (hereinafter the "Custom Report") – to be incorporated into Defendants' copy of Plaintiff's RIGHTCLICK® program.  Annexed hereto as **Exhibit T** is a copy of the Wise Choice Work Order, signed by Sofer, dated January 3, 2003.  As a result of BSI's request, Plaintiff CFI created the Custom Report for BSI, Custom Report was installed on BSI's computer system by CFI.

121.    On or about January 22, 2004, defendants BSI and Sofer purchased an additional module for use with their licensed copy of Plaintiff's RIGHTCLICK®.  Annexed hereto as **Exhibit U** is a copy of the order form and license agreement signed by Sofer, dated January 22, 2004.

122.    In or about October 2005, defendants BSI and Sofer purchased additional modules for use with their licensed copy of Plaintiff's RIGHTCLICK® program.  Defendants BSI and Sofer signed Plaintiff's user license agreement (*see* **Exhibit F**).  Annexed hereto as **Exhibit V** is a copy of the CFI license agreement signed by defendants BSI and Sofer, dated October 20, 2005.

123.    The license agreement signed by BSI and Sofer in October 2005 specifies at ¶ 2 therein that:

> The SOFTWARE is the intellectual property of CFI; its structure, organization and source code are valuable trade secrets and confidential information of CFI. LICENSEE may not: (a) reverse engineer, de-compile, or disassemble the software or allow others to do so; (b) modify or create derivative works based upon the SOFTWARE in whole or in part; (c) distribute copies of the SOFTWARE; (d) remove any proprietary notices or labels on the SOFTWARE; or (e) assign, resell, lease, rent, transfer, convey, license, sublicense, or otherwise transfer rights to the SOFTWARE to any affiliate, subsidiary or any other third party.

124.    Defendant ISM Software website, at www.ismsoftware.com, until very recently contained a direct link to BSI's website at www.benysofer.com.  The "Products" tab on the ISM Software website brought up a web page indicating "Products – ISM Software"; following the line "Here you can find presentation" was a hyperlink that jumps the viewer directly to BSI's website.  Annexed hereto as **Exhibit W** is a PDF copy of the ISM Software "Products" web page showing the linkage with the BSI website followed by the BSI home web page.  These two pages were extracted from a PDF document created directly from the ISM Software website, www.ismsoftware.com, on March 31, 2008, in which was preserved the hyperlinks actually embedded in the ISM Software website including the hyperlink to the BSI website.  The jewelry image (photo of a jeweled ring) that appears on ISM Software's webpage – with the indication that "The data is taken from Jagsys database" – is an image file produced by Plaintiff and taken right out Plaintiff's RIGHTCLICK® image database.

125.    A query into the infringing Jagsys program for references to "Sofer" discloses line references in Jagsys for "Benny Sofer Certificate Label."  Additionally a copy of the screenshot from the Jagsys database file at "jagsys.dbo.certstagesetup" is annexed hereto as **Exhibit X**, and

shows three references "Benny Sofer Certificate Label," "BS Certificate Label 2.75 x 1.25" and "BenySofer Certificate Label #2".

126.    The Custom Report created for BSI by Plaintiff CFI appears in the Jagsys program. Attached as **Exhibit Y** is a print out from the Custom Report Plaintiff created for BSI and the same report printout from Jagsys.  **Exhibit Y** shows the substantial similarity between the two reports.  The column order and column identifiers in the Jagsys report printout mirror the column identifiers and the same order of appearance as indicated in Wise Choice Work Order of January 3, 2003 (see **Exhibit T**).  These files could only appear in Jagsys either with BSI and Sofer's cooperation with defendants Softnet, ISM and Mardkha in providing them with the Custom Report, or with BSI and Sofer's cooperation with defendants Softnet, ISM and Mardkha in allowing Softnet, ISM and Mardkha to copy RIGHTCLICK® program licensed to BSI and Sofer.  In either instance, BSI and Sofer breached the terms of their license agreement with Plaintiff CFI in connection with Defendants' licensed use of the RIGHTCLICK® program, for which defendants BSI and Sofer are liable.

127.    The fact that the Custom Report, created for BSI by Plaintiff, runs in Defendants' Jagsys clearly indicates that Jagsys is a copy of RIGHTCLICK® because the Custom Report requires the same underlying software engine in order to run.

128.    In either allowing defendants Softnet, ISM and Mardkha to copy and to use the Custom Report in Jagsys and/or allowing defendants Softnet, ISM and Mardkha to copy BSI and Sofer's licensed copy of RIGHTCLICK®, defendant BSI and Sofer have facilitated and contributed to Softnet, ISM and Mardkha's infringement of Plaintiff's exclusive copyright in the RIGHTCLICK® program, for which defendants BSI and Sofer are liable.

**COUNT I:**
**COPYRIGHT INFRINGEMENT AND/OR CONTRIBUTORY INFRINGEMENT OF**
**DEFENDANTS SOFTNET, ISM AND MARDKHA IN VIOLATION OF 17 U.S.C. §§ 106**
**and 501 AS TO THE INFRINGING JAGSYS PROGRAM**

129.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

130.    As the owner of the Copyrighted Programs, Plaintiff CFI enjoys the exclusive

right to (1) reproduce the Copyrighted Programs, (2) prepare derivative works based upon the

Copyrighted Programs, (3) distribute copies of the Copyrighted Programs, and (4) display and

use the Copyrighted Programs. 17 U.S.C. § 106.

131.    Plaintiff markets, promotes and sells the Copyrighted Programs throughout the

United States.

132.    The infringing Jagsys program is copied from and is substantially similar to, if

not virtually identical with, plaintiff's original Copyrighted Programs, in particular Plaintiff's

RIGHTCLICK® program, and therefore infringes the copyright thereof.

133.    The Defendants Softnet, ISM and Mardkha had actual knowledge of and direct

access to the Copyrighted Programs, including selling and installing the Copyrighted Programs

for and on the computer systems of Plaintiff CFI's customers.

134.    Upon information and belief, Defendants Softnet, ISM and Mardkha had access to

and have decrypted, disassembled, de-compiled, copied and replicated the Copyrighted Programs

from which they created, developed, promoted, marketed, sold and otherwise distributed a

competing product that is substantially similar if not virtually identical to Plaintiff's Copyrighted

Programs, in particular Plaintiff's RIGHTCLICK® program, and thereby infringed Plaintiff's

exclusive rights in Copyrighted Programs in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

135.    In the alternative and as alleged herein, Defendants Softnet, ISM and Mardkha have facilitated, induced and/or contributed to the unauthorized acts of others in circumventing Plaintiff's software security and decrypted, disassembled, de-compiled, copied and replicated the Copyrighted Programs, and facilitated the development, marketing, promotion selling, and otherwise distribution of the infringing Jagsys program and, as such, Defendants Softnet, ISM and Mardkha are liable as contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

136.    Upon information and belief, at all times relevant hereto, defendants Softnet, ISM and Mardkha have been aware of the existence of Plaintiff's copyrights in the Copyrighted Programs and, therefore, their conduct was willful and deliberate and/or in willful disregard of Plaintiff's exclusive rights in the Copyrighted Programs.

137.    Upon information and belief, defendant Mardkha is the chief executive officer and sole shareholder of corporate defendant Softnet and is the chief source, instigator and motivator of said corporate Defendant's conduct and the torts committed by said corporate Defendant and, as such, defendant Mardkha is jointly and severally liable with said corporate Defendant.

138.    Upon information and belief, Mardkha is the owner, director and/or sole proprietor of defendant ISM and as such is identified indivisibly with and/or is the alter ego of ISM and is therefore responsible and liable for the acts, conduct and torts committed in the name of defendant ISM.

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

139.    In the alternative and upon information and belief, Mardkha is the chief executive officer, director and/or principal of defendant ISM and is the chief source, instigator and motivator of said ISM's conduct and the torts committed by ISM and, as such, defendant Mardkha is jointly and severally liable with ISM.

140.    The infringement of Plaintiff's copyrights by Defendants Softnet, ISM and Mardkha have caused and will cause irreparable harm to Plaintiff's product, reputation and goodwill unless restrained by this Court.  Said Defendants' infringement will harm Plaintiff's reputation as the creator and producer of well respected commercial software and have damaged and will continue to damage the value of and market for Plaintiff's original Copyrighted Programs.  Plaintiff CFI has no adequate remedy at law for said Defendants' infringement.

141.    Defendants Softnet, ISM and Mardkha's infringement and/or contributory infringement have caused actual damage to Plaintiff CFI in an amount that cannot be determined without discovery.  In addition, said Defendants have profited by their infringement of the Copyrighted Programs to the detriment of Plaintiff CFI.

142.    Plaintiff CFI has no adequate remedy at law for Defendants' infringement of Plaintiff's Copyrighted Programs.  Unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

143.    By reason of Defendants Softnet, ISM and/or Mardkha's unlawful conduct as alleged above, Plaintiff CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' infringement, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 504(b) & (c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.

**COUNT II:**
**COPYRIGHT INFRINGEMENT OF DEFENDANTS SOFTNET, ISM AND**
**MARDKHA IN VIOLATION OF 17 U.S.C. §106(2) AS TO THE INFRINGING**
**DERIVATIVE FABSYS SOFTWARE PROGRAM**

144.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

145.    As the owner of the Copyrighted Programs, Plaintiff CFI enjoys the exclusive

right to prepare derivative works based upon the Copyrighted Programs, pursuant to 17 U.S.C.

§§ 101 and 106.

146.    Plaintiff markets, promotes and sells the Copyrighted Programs throughout the

United States.

147.    The Defendants Softnet, ISM and Mardkha had actual knowledge of and direct

access to the Copyrighted Programs, including selling and installing the Copyrighted Programs

for and on the computer systems of Plaintiff CFI's customers.

148.    Upon information and belief, Defendants Softnet, ISM and Mardkha had access to

and have decrypted, disassembled, de-compiled, copied and replicated the Copyrighted Programs

from which they created, developed, promoted, marketed, sold and otherwise distributed a

infringing Jagsys program from which said Defendants derived, developed, produced, marketed,

promoted, sold and/or otherwise distributed the Fabsys program.

149.    Upon information and belief, Defendants Softnet, ISM and/or Mardkha's Fabsys

software program is derivative of Defendants' infringing Jagsys program and, therefore, is

illegitimately derivative of Plaintiff's Copyrighted Programs and therefore infringes Plaintiff's

exclusive rights in the Copyrighted Programs in violation of the Copyright Act, 17 U.S.C. §§

101, et seq.

150.    In the alternative and as alleged herein, Defendants Softnet, ISM and Mardkha have facilitated, induced and/or contributed to the unauthorized acts of others in deriving, developing, marketing, promoting, selling, and/or otherwise distributing the infringing Fabsys which is derivative of plaintiff's Copyrighted Programs and, as such, said Defendants are liable as a contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

151.    Upon information and belief, at all times relevant hereto, defendants Softnet, ISM and Mardkha have been aware of the existence of Plaintiff's copyrights in the Copyrighted Programs and, therefore, their conduct was willful and deliberate and/or in willful disregard of Plaintiff's exclusive rights in the Copyrighted Programs.

152.    Upon information and belief, defendant Mardkha is the chief executive officer and sole shareholder of corporate defendant Softnet and is the chief source, instigator and motivator of said corporate Defendant's conduct and the torts committed by said corporate Defendant and, as such, defendant Mardkha is jointly and severally liable with said corporate Defendant.

153.    Upon information and belief, Mardkha is the owner, director and/or sole proprietor of defendant ISM and as such is identified indivisibly with and/or is the alter ego of ISM and is therefore responsible and liable for the acts, conduct and torts committed in the name of defendant ISM.

154.    In the alternative and upon information and belief, Mardkha is the chief executive officer, director and/or principal of defendant ISM and is the chief source, instigator and motivator of said ISM's conduct and the torts committed by ISM and, as such, defendant Mardkha is jointly and severally liable with ISM.

155.    The infringement of Plaintiff's copyrights by Defendants Softnet, ISM and Mardkha have caused and will cause irreparable harm to Plaintiff's product, reputation and goodwill unless restrained by this Court.  Said Defendants' infringement will harm Plaintiff's reputation as the creator and producer of well respected commercial software and have damaged and will continue to damage the value of and market for Plaintiff's original Copyrighted Programs.  Plaintiff CFI has no adequate remedy at law for said Defendants' infringement.

156.    Defendants Softnet, ISM and Mardkha's infringement and/or contributory infringement have caused actual damage to Plaintiff CFI in an amount that cannot be determined without discovery.  In addition, said Defendants have profited by their infringement of the Copyrighted Programs to the detriment of Plaintiff CFI.

157.    Plaintiff CFI has no adequate remedy at law for Defendants' infringement of Plaintiff's Copyrighted Programs.  Unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

158.    By reason of Defendants Softnet, ISM and/or Mardkha's unlawful conduct as alleged above, Plaintiff CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' infringement, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 504(b) & (c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.

**COUNT III**:
**COPYRIGHT INFRINGEMENT OF DEFENDANTS SOFTNET, ISM AND MARDKHA IN VIOLATION OF 17 U.S.C. §106(2) AS TO THE INFRINGING DERIVATIVE RACSYS SOFTWARE PROGRAM**

159.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

160.    As the owner of the copyrighted works, Plaintiff CFI enjoys the exclusive right to prepare derivative works based upon the copyrighted works, pursuant to 17 U.S.C. §§ 101 and 106.

161.    Plaintiff markets, promotes and sells the Copyrighted Programs throughout the United States.

162.    The Defendants Softnet, ISM and Mardkha had actual knowledge of and direct access to the Copyrighted Programs, including selling and installing the Copyrighted Programs for and on the computer systems of Plaintiff CFI's customers.

163.    Upon information and belief, Defendants Softnet, ISM and Mardkha had access to and have decrypted, disassembled, de-compiled, copied and replicated the Copyrighted Programs from which they created, developed, promoted, marketed, sold and otherwise distributed a infringing Jagsys program from which said Defendants derived, developed, produced, marketed, promoted, sold and/or otherwise distributed the Racsys program.

164.    Upon information and belief, Defendants Softnet, ISM and/or Mardkha's Racsys software program is derivative of Defendants' infringing Jagsys program and, therefore, is illegitimately derivative of Plaintiff's Copyrighted Programs and therefore infringes Plaintiff's exclusive rights in the Copyrighted Programs in violation of the Copyright Act, 17 U.S.C. §§ 101, et seq.

165. In the alternative and as alleged herein, Defendants Softnet, ISM and Mardkha have facilitated, induced and/or contributed to the unauthorized acts of others in deriving, developing, marketing, promoting, selling, and/or otherwise distributing the infringing Racsys which is derivative of plaintiff's Copyrighted Programs and, as such, said Defendants are liable as a contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

166. Upon information and belief, at all times relevant hereto, defendants Softnet, ISM and Mardkha have been aware of the existence of Plaintiff's copyrights in the Copyrighted Programs and, therefore, their conduct was willful and deliberate and/or in willful disregard of Plaintiff's exclusive rights in the Copyrighted Programs.

167. Upon information and belief, defendant Mardkha is the chief executive officer and sole shareholder of corporate defendant Softnet and is the chief source, instigator and motivator of said corporate Defendant's conduct and the torts committed by said corporate Defendant and, as such, defendant Mardkha is jointly and severally liable with said corporate Defendant.

168. Upon information and belief, Mardkha is the owner, director and/or sole proprietor of defendant ISM and as such is identified indivisibly with and/or is the alter ego of ISM and is therefore responsible and liable for the acts, conduct and torts committed in the name of defendant ISM.

169. In the alternative and upon information and belief, Mardkha is the chief executive officer, director and/or principal of defendant ISM and is the chief source, instigator and motivator of said ISM's conduct and the torts committed by ISM and, as such, defendant Mardkha is jointly and severally liable with ISM.

170.    Plaintiff CFI has no adequate remedy at law for Defendants' infringement of Plaintiff's Copyrighted Programs.  Unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

171.    By reason of Defendants Softnet, ISM and/or Mardkha's unlawful conduct as alleged above, Plaintiff CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' infringement, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 504(b) & (c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.

**COUNT IV:**
**COPYRIGHT INFRINGEMENT AND/OR CONTRIBUTORY INFRINGEMENT OF DEFENDANTS BENY SOFER INC. AND BENY SOFER IN VIOLATION OF 17 U.S.C. §106(2) and 501 AS TO THE INFRINGING JAGSYS PROGRAM**

172.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

173.    As the owner of the Copyrighted Programs, Plaintiff CFI enjoys the exclusive right to (1) reproduce the Copyrighted Programs, (2) prepare derivative works based upon the Copyrighted Programs, (3) distribute copies of the Copyrighted Programs, and (4) display and use the Copyrighted Programs. 17 U.S.C. § 106.

174.    As set forth in the aforementioned allegations, the Jagsys program is substantially similar to, if not virtually identical with Plaintiff's original Copyrighted Programs and therefore infringes Plaintiff's original Copyrighted Programs in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

175.    In signing the license agreements in connection with the purchase and use of Plaintiff's Copyrighted Programs, Defendants BSI and Beny Sofer acknowledged the Copyrighted Programs as intellectual property of Plaintiff.

176.    Upon information and belief, defendants BSI and Beny Sofer gave defendants Softnet, ISM and/or Mardkha access to the RIGHTCLICK® program installed on BSI's computer systems and provided Softnet, ISM and/or Mardkha with the Custom Report file created by Plaintiff specifically for BSI and Beny Sofer's use with Plaintiff's RIGHTCLICK® program.

177.    Upon information and belief, defendants Softnet, ISM and/or Mardkha were able to use the access to Plaintiff's RIGHTCLICK® program provided by BSI and Beny Sofer to copy and incorporate substantial elements of Plaintiff's Copyrighted Programs into the infringing Jagsys program and to copy and incorporate into the infringing Jagsys program the Custom Report created by Plaintiff for BSI and Beny Sofer's use with RIGHTCLICK®.

178.    Defendants BSI and Beny Sofer thereby facilitated and contributed to the infringement committed by defendants Softnet, ISM and/or Mardkha in violation of the Copyright Act, 17 U.S.C. §§ 106(2) and 501, for which defendants BSI and Beny Sofer are liable.

179.    Upon information and belief, defendant Beny Sofer is the chief executive officer and principal of corporate defendant BSI and is the chief source, instigator and motivator of said corporate Defendant's conduct and the torts committed by said corporate Defendant and, as such, defendant Beny Sofer is jointly and severally liable with said corporate Defendant.

180.    In the alternative and as alleged herein, Defendants have facilitated, induced and/or contributed to the unauthorized acts of others in circumventing Plaintiff's software

security, copying and replicating Plaintiff's copyrighted works, marketing, selling, importing, and otherwise distributing the infringing Jagsys program and, as such, Defendants are liable as a contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

181.    Defendants' infringement and/or contributory infringement have caused actual damage to Plaintiff CFI in an amount which is presently indeterminate.  In addition, Defendant has profited by their infringement of the copyrighted works to the detriment of Plaintiff CFI.

182.    Plaintiff CFI has no adequate remedy at law for Defendants BSI and Beny Sofer's infringement of Plaintiff's Copyrighted Programs.  Unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

183.    By reason of Defendants BSI and Beny Sofer's unlawful conduct as alleged above, Plaintiff CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' infringement, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 504(b) & (c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.


**COUNT V**:
**FALSE COPYRIGHT MANAGEMENT INFORMATION AS TO DEFENDANTS SOFTNET, ISM AND MARKKHA IN VIOLATION OF 17 U.S.C. § 1202**

184.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

185.    The copyright notice in the infringing Jagsys program identified Plaintiff and wrongly indicated that JAJGSYS is a registered trademark of Plaintiff CFI, which is false and is also a false distortion of the copyright notice in Plaintiff's original Copyrighted Programs.

186.    As set forth in the foregoing allegations an upon information and belief, defendants Softnet, ISM and/or Mardkha knowingly and with the intent to induce, enable, facilitate and/or conceal their infringement of Plaintiff's Copyrighted Programs provided false copyright management information and promoted, marketed, offered for sale, sold and/or distributed the infringing Jagsys program with false copyright management information in violation of 17 U.S.C. § 1202.

187.    Defendants' conduct has caused actual damage to Plaintiff CFI in an amount which is presently indeterminate.  In addition, Defendant has profited by their conduct to the detriment of Plaintiff CFI.

188.    Plaintiff CFI has no adequate remedy at law for Defendants' conduct and unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

189.    By reason of Defendants Softnet, ISM and/or Mardkha's unlawful conduct as alleged above, Plaintiff CFI has been injured and is entitled to damages and Defendants' profits attributable to Defendants' conduct, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 1203(c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.

**COUNT VI**:
**CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS AS TO
DEFENDANTS SOFTNET, ISM AND MARKKHA IN VIOLATION OF 17 U.S.C. § 1201**

190.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

191.    As set forth in the foregoing allegations, Plaintiff CFI uses several protection mechanisms and additionally encrypts the RIGHTCLICK® source code using a security program called Armadillo.

*Complaint*
*Centrifugal Software v. Softnet Communication, et al.*

192.    Upon information and belief, defendants Softnet, ISM and/or Mardkha hacked, breached and circumvented Plaintiff CFI's security measures on the RIGHTCLICK® program in order to gain access to the RIGHTCLICK® source code for the purpose of copying and replicating the source code in the infringing Jagsys program in violation of Digital Millennium Copyright Act, 17 U.S.C. § 1201(a).

193.    Defendants' conduct of breaching and circumventing Plaintiff CFI's security measures and encryption on CFI's proprietary RIGHTCLICK® source code and copying the source code in the infringing Jagsys program without adequate security measures leaves CFI's proprietary source code vulnerable to reverse engineering and copying by any third party.

194.    Defendants' release and distribution of the infringing Jagsys without security in the source code unilaterally deprives Plaintiff CFI of the ability to control the access to CFI's proprietary source code, thereby irreparably damaging CFI.

195.    Defendants' conduct has caused actual damage to Plaintiff CFI in an amount which is presently indeterminate.  In addition, Defendant has profited by their conduct to the detriment of Plaintiff CFI.

196.    Plaintiff CFI has no adequate remedy at law for Defendants' conduct and unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

197.    By reason of defendants Softnet, ISM and/or Mardkha's unlawful conduct as alleged above, Plaintiff CFI has been injured and is entitled to damages and Defendants' profits attributable to Defendants' conduct, which are presently indeterminate, or in the alternative Plaintiff's is entitled to elect statutory damages against Defendants, pursuant to 17 U.S.C. § 1203(c), together with the costs of this action, and attorney's fees pursuant to 17 U.S.C. § 505.

**COUNT VII:**
**TRADEMARK INFRINGEMENT AS TO DEFENDANTS SOFTNET, ISM AND**
**MARDKHA IN VIOLATION OF 15 U.S.C. §1117**

198.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

199.    Upon information and belief, defendants Softnet, ISM and/or Mardkha promoted,
distributed, offered for sale, and/or sold their infringing Jagsys program to the relevant
consuming public, as well as to CFI's own customers, in direct competition with CFI's genuine
Copyrighted Programs.

200.    Defendants Softnet, ISM and/or Mardkha's use of Plaintiff's registered WISE
CHOICE SOFTWARE trademark on or in connection with the infringing Jagsys program, as
alleged above, constitutes an infringement of Plaintiff's registered trademark and will likely
confuse or deceive the consuming public in wrongfully perceiving a relationship or affiliation
between Plaintiff and Defendants or an endorsement or sponsorship by Plaintiff of Defendants'
use.

201.    Defendants Softnet, ISM and/or Mardkha's actions constitute trademark
infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

202.    Plaintiff CFI has no adequate remedy at law for Defendants' infringement of its
federally registered trademark.  Unless Defendants are permanently enjoined, Plaintiff CFI will
continue to suffer irreparable harm.

203.    By reason of Defendants' unlawful conduct as alleged above, Plaintiff CFI has
been substantially injured and is entitled to damages and Defendants' profits attributable to
Defendants' infringement, which are presently indeterminate, the costs of this action, and
attorney's fees, pursuant to 15 U.S.C. § 1117.

**COUNT VIII**:
**FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a) AS TO DEFENDANTS SOFTNET, ISM AND MARDKHA**

204.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

205.    Plaintiff CFI has built a substantial commercial advantage through consistent use and promotion of its name and its trademarks WISE CHOICE SOFTWARE®, the RIGHTCLICK®, and the CFI trademark registrations together the Copyrighted Programs.

206.    As set forth in the foregoing allegations, the conduct of defendants Softnet, ISM and/or Mardkha of using false copyright management information and CFI's WISE CHOICE SOFTWARE®, trademark in the infringing Jagsys program is likely to and will inevitably confuse, mislead, and deceive the public as to the source of origin of the infringing Jagsys program and misappropriates the goodwill that CFI has expended time, labor, and money to create over time.

207.    Defendants marketing, promotion, offering for sale, sale and distribution of the Jagsys software program that is a knockoff and illegitimate replica of Plaintiff CFI's original RIGHTCLICK® to Plaintiff's own customers is likely to and will inevitably confuse, mislead, and deceive the public as to the source of origin of the infringing Jagsys program and misappropriates the goodwill that CFI has expended time, labor, and money to create over time.

208.    Upon information and belief, Defendants' aforementioned acts constitute unfair competition, false designation of origin, and passing off the knockoff Jagsys, Racsys and Fabsys programs as original works when they are unlawful copies of CFI's original Copyrighted Programs, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

209.    Upon information and belief, the acts of Defendants complained of herein have been done willfully for the purpose of unfairly competing with Plaintiff CFI and to injure and damage CFI and its business.

210.    Upon information and belief, as a proximate result of Defendants' actions, Plaintiff CFI has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.

211.    Upon information and belief, CFI has no adequate remedy at law for Defendants' wrongful acts as alleged herein.  Unless Defendants are preliminarily and permanently enjoined, CFI will continue to suffer irreparable harm.

212.    Upon information and belief, by reason of Defendants' unlawful conduct as alleged above, CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' wrongful acts as alleged herein, which are presently indeterminate, the costs of this action, and attorney's fees, pursuant to 15 U.S.C. § 1117.

**COUNT IX:**
**COMMON LAW UNFAIR COMPETITION AND UNJUST**
**ENRICHMENT AT COMMON LAW AS TO ALL DEFENDANTS**

213.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

214.    Upon information and belief, Defendants violated CFI's software security measures protecting the source code to CFI's Copyright Programs, and copied CFI's proprietary source code to create the infringing Jagsys, Fabsys and Racsys programs.

215.    Furthermore and upon information and belief, Defendants have been promoting, marketing, offering for sale, selling, using and otherwise distributing to the relevant consuming public, including CFI's own customer, software programs that are knockoffs and infringing

replicas of Plaintiff CFI's Copyrighted Programs and use and misappropriate Plaintiff CFI

proprietary source code as well as use and falsely designate Plaintiff's registered trademarks.

216. Upon information and belief, Defendants have been falsely representing to CFI's

customers and others that the infringing programs are Defendants Softnet, ISM and/or

Mardkha's original works.

217. Upon information and belief, Defendants have been representing to CFI's

customers and others that the infringing programs are compatible with CFI's original

Copyrighted Programs and that customers' data can be converted from CFI's original

Copyrighted Programs to Defendants' infringing programs, when in fact the infringing programs

are knockoffs and replicas of CFI's original Copyrighted Programs. Upon information and

belief, Defendants made said representations with the intent to induce CFI's customers and

others to buy the infringing programs, thereby switching customer use from CFI's original

Copyrighted Programs to the infringing programs.

218. In discontinuing use of CFI's original Copyrighted Programs to adopt the

infringing programs, customers would also discontinue their ongoing support subscription

services with CFI.

219. The aforesaid acts of Defendants wrongfully misappropriated and traded upon

CFI's property and the reputation and goodwill embodied in Plaintiff's Copyrighted Programs,

including CFI's proprietary source code, from which Defendants have benefited and deprived

Plaintiff of the benefits arising from the goodwill embodied in Plaintiff's products.

220. The Defendants' misappropriation and unfair competition will interfere with

Plaintiff's rights and ability to exploit the commercial value and goodwill of Plaintiff's products,

including the Copyrighted Programs and will cause substantial and irreparable damage, injury

and loss to plaintiff and constitutes unfair competition and infringement of Plaintiff's rights at common law.

221.    Defendants have received and will continue to receive substantial profits from their unauthorized use and misappropriation of Plaintiff's Copyrighted Programs, including CFI's proprietary source code, and will become unjustly enriched thereby.

222.    All moneys received by Defendants as a result of their wrongful acts and conduct are deemed to be held in constructive trust for the benefit of Plaintiff and, therefore, Plaintiff is entitled to an accounting of Defendants' income and profit and an award to plaintiff of such amounts as determined by said accounting.

**COUNT X**:
**BREACH OF CONTRACT AS TO ALL DEFENDANTS**

223.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

224.    As set forth in the foregoing allegations, Plaintiff CFI requires its customers to sign a license agreement in connection with the Copyrighted Programs that are installed on customers' computer systems.

225.    Furthermore, the Copyrighted Programs have click license agreements that require users to affirmatively click their acknowledgment and agreement.

226.    By installing, accessing and using Plaintiff's Copyrighted Programs, Defendants were required to acknowledge and consent to the click license agreements and, with respect to defendants BSI and Beny Sofer, execute the written license agreements with Plaintiff CFI.

227.    As set forth in the foregoing allegations, the conduct of Defendants constitutes a breach of the license agreements for which Defendants are liable in an amount that is presently indeterminate.

**COUNT XI**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AS TO**
**DEFENDANTS SOFTNET, ISM AND MARDKHA**

228.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

229.    As set forth in the foregoing allegations and upon information and belief, Defendants Softnet, ISM and/or Mardkha knowingly and intentionally promoted, marketed, offered for sale, sold and distributed their Jagsys program to CFI's customers with the promise and representation that Jagsys would have a one way compatibility and convert customers' data from CFI's RIGHTCLICK® program and would even correct errors and problems in CFI's RIGHTCLICK® program that said Defendants misrepresented the RIGHTCLICK® program was causing, when in fact the infringing programs are knockoffs and replicas of CFI's original Copyrighted Programs.

230.    Upon information and belief, Softnet, ISM and/or Mardkha engaged in a pattern of intentionally misrepresenting that customers' computer system malfunctions were attributable to CFI's RIGHTCLICK® program to set the stage for defendants Softnet, ISM and/or Mardkha to later capture Plaintiff's own customers for the knock-off Jagsys program, which is essentially a replica of CFI's RIGHTCLICK® program.

231.    Upon information and belief, defendants Softnet, ISM and/or Mardkha had actual knowledge that such customers were users of CFI's RIGHTCLICK® program and subscribers of

CFI's maintenance services and, therefore, had actual knowledge or should have known that said customers were in a contractual relationship with Plaintiff CFI.

232.    Upon information and belief, Defendants have been promoting, marketing, offering for sale, selling, using and otherwise distributing software programs that are knockoffs and infringing replicas of Plaintiff CFI's Copyrighted Programs to CFI's own customers and others.

233.    Upon information and belief, Defendants have been falsely representing to CFI's customers and others that the infringing programs are Defendants Softnet, ISM and/or Mardkha's original works.  Upon information and belief, Defendants made said representations with the intent to induce CFI's customers and others to buy the infringing programs, thereby switching customer use and ongoing subscription services from CFI's original Copyrighted Programs to the infringing programs.

234.    Defendants' conduct constitutes tortious interference with Plaintiff's contractual relationships, for which said Defendants are liable.

235.    Plaintiff CFI has suffered in an amount which is presently indeterminate as the direct and proximate cause of said Defendants' conduct.  In addition, Defendants have profited by their tortious conduct.

236.    Plaintiff CFI has no adequate remedy at law for Defendants' tortious conduct. Unless Defendants are permanently enjoined, Plaintiff CFI will continue to suffer irreparable harm.

**COUNT XII**:
**<u>DECPETIVE TRADE PRACTICES</u>**

237.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

238.    This claim arises under the state law of the State of New York.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338 (b) and based on supplemental jurisdiction.

239.    Upon information and belief, Defendants have been promoting, marketing, offering for sale, selling, using and otherwise distributing software programs that are knockoffs and infringing replicas of Plaintiff CFI's Copyrighted Programs and have unlawfully accessed, copied and misappropriated CFI's proprietary source code as well as used and falsely designated Plaintiff's registered trademarks.

240.    Upon information and belief, Defendants have been falsely representing to CFI's customers and others that the infringing programs are Defendants Softnet, ISM and/or Mardkha's original works.

241.    Upon information and belief, Defendants have been representing to CFI's customers and others that the infringing programs are compatible with CFI's original Copyrighted Programs and that customers' data can be converted from CFI's original Copyrighted Programs to Defendants' infringing programs, when in fact the infringing programs are knockoffs and replicas of CFI's original Copyrighted Programs.

242.    Upon information and belief, Defendants made said representations with the intent to induce CFI's customers and others to buy the infringing programs, thereby switching customer use from CFI's original Copyrighted Programs to the infringing programs.

*Complaint*
*Centrifugal Software v. Softnet Communication, et al.*

243.    Upon information and belief, Defendants' conduct constitutes deceptive business acts or practices in violation of N.Y. Gen. Bus. Law. § 349

244.    Upon information and belief, as a proximate result of Defendants' actions, Plaintiff CFI has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.

245.    Upon information and belief, CFI has no adequate remedy at law for Defendants' wrongful acts as alleged herein.  Unless Defendants are permanently enjoined, CFI will continue to suffer irreparable harm.

246.    Upon information and belief, by reason of Defendants' unlawful conduct as alleged above, CFI has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' wrongful acts as alleged herein, which are presently indeterminate, the costs of this action, and attorney's fees.


**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that the Court grant the following relief:

(a)    Declare that Defendants have infringed Plaintiff's copyrights in the Copyrighted Programs;

(b)    Pursuant to 17 U.S.C. § 502, permanently enjoin Defendants, together with their officers, agents, servants, employees and attorneys and all persons in active concert or participation with them from infringing the Copyrighted Programs or other copyrighted works owned or exclusively licensed by Plaintiff in any manner, and from copying, making, marketing, selling, distributing and otherwise generating income from any works that have been derived in

whole or in part from Plaintiff's Copyrighted Programs, including without limitation the infringing Jagsys, Fabsys and Racsys software programs;

(c)    Pursuant to 17 U .S.C. § 503:

(i)  Order Defendants forthwith to deliver up to CFI for destruction all infringing works and all copies containing the infringing Jagsys, Fabsys and Racsys programs (regardless of the media on which they are contained), including without limitation erasing and eradicating any and all stored copies (regardless of location or medium) of the infringing Jagsys, Fabsys and Racsys programs, and any prototypes, notes, developmental material and mockups;

(ii)  Order Defendants to block out all references to the infringing Jagsys, Fabsys and Racsys from Defendants' catalogs, brochures, websites and any other marketing or promotional material; to stop distributing catalogs, brochures or other marketing and promotional material that depict or otherwise reference the infringing Jagsys, Fabsys and Racsys; to delete any reference to the infringing Jagsys, Fabsys and Racsys from price lists, websites and all other marketing and sales material; and to advise customers that the infringing Jagsys, Fabsys and Racsys are no longer available;

(iii)  Order the recall and removal of any and all copies of the infringing Jagsys, Fabsys and Racsys programs from customers of Defendants or any other party who received or to whom Defendants distributed any copy of the Jagsys, Fabsys and Racsys programs;

(iv)  Identify to Plaintiff all persons and entities that have purchased, licensed or otherwise received or to whom Defendants distributed any copy of the Jagsys, Fabsys and Racsys programs.

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

(iv)  Notify in writing all persons and/or entities that have purchased, licensed or otherwise received or to whom Defendants distributed any copy of the Jagsys, Fabsys and Racsys programs, that said programs infringe Plaintiff's copyrights, that the continued use and/or distribution of the said programs constitutes copyright infringement, and request the discontinuance of all use of the said programs and to return to Plaintiff all copies of the installation disks (and all copies thereof);

(d)      Pursuant to 17 U.S.C. § 504, order an accounting of all gains, profits and advantages derived by Defendants, each of them, from their copyright infringements, and that Defendants be required to pay to plaintiff the actual damages that plaintiff has sustained and defendant's profits attributable to their copyright infringement, including enhanced damages for Defendants' willful infringement, in an amount to be determined at trial;

(e)      In the alternative and pursuant to 17 U.S.C. § 504(c), order that Plaintiff shall be awarded statutory damages against and from Defendants in an amount to be determined at trial;

(f)      Order defendants to disclose to plaintiff the source and/or collaboration of any other programmers, developers, manufacturers, the supplier(s), distributors, vendors, agents, and dealers involved with the development, production, marketing, promotion, offer for sale and sale of the infringing Jagsys, Fabsys and Racsys programs;

(g)      Pursuant to 17 U.S.C. § 505, order Defendants to pay Plaintiff's costs and reasonable attorneys fees;

(h)      Pursuant to 15 U.S.C. § 1116, permanently enjoin Defendants:

(i)   from using the trademarks WISE CHOICE SOFTWARE and RIGHTCLICK on or in connection with any software or computer related product or in any manner that is likely to cause others to believe that Defendants' products or services are connected

Complaint
*Centrifugal Software v. Softnet Communication, et al.*

with or authorized by CFI or are genuine CFI products or that Defendants are otherwise associated or connected with CFI;

(ii)  from passing off, inducing, or enabling others to sell or pass off any product as genuine CFI products that are not genuine CFI products;

(iii)  from committing any acts calculated to cause purchasers to believe that Defendants' products are genuine CFI products;

(i)      Pursuant to 15 U.S.C. § 1117, order an accounting of all gains, profits and advantages derived by Defendants, each of them, from their trademark infringement and unfair competition, and that Defendants be required to pay to Plaintiff the actual damages that plaintiff has sustained and defendant's profits attributable to their trademark infringement and unfair competition, and that such amounts be trebled as provided by law, together with Plaintiff's costs and reasonable attorney's fees;

(j)      Order Defendants to pay over to Plaintiff all profits and sums by which Defendants have been unjustly enriched by reason of their unlawful acts as alleged herein.

(j)      That Defendants, within thirty (30) days after service of the Order of permanent injunction and thereafter upon the entry of Final Judgment be required to file with the Court and serve upon CFI a written report under oath setting forth in detail the manner in which Defendants have complied with the directives of the permanent injunction.

(k)      Grant Plaintiff such other and further relief that the Court may deem just and proper.

*Complaint*
*Centrifugal Software v. Softnet Communication, et al.*

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues in this action triable of right by jury.

Dated: June 16, 2008

Respectfully submitted,

CODISPOTI & MANCINELLI, LLP

By: _____
Steven Mancinelli (SM-0208)
111 John Street, Suite 800
New York, NY 10038
Phone: (212) 962-6525
Fax: (212) 962-6791

*Attorneys for Plaintiff Centrifugal Software, Inc.*