UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CENTRIFUGAL FORCE, INC.,                              :

                  Plaintiff,           :

             -v.-                           :

SOFTNET COMMUNICATION, INC., et al.,    :

             Defendants.          :
----------------------------------------------------------------x

        08 Civ. 5463 (CM) (GWG)

        <u>OPINION AND ORDER</u>

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

    Plaintiff Centrifugal Force, Inc., d/b/a Wise Choice Software ("CFI"), has moved for sanctions pursuant to Fed. R. Civ. P. 37 against defendants Beny Sofer, Inc. ("BSI") and BSI's principal Beny Sofer (collectively, the "Sofer Defendants"), as well as defendants Michael Mardkha and Aleksander Staszulonek d/b/a PowerLine Computers ("Staszulonek" or "PowerLine") on the ground that they engaged in the spoliation of evidence. For the reasons stated below, the motion for sanctions is denied.

I.    <u>BACKGROUND</u>

    A.    <u>The Nature of the Action and the Spoliation Allegations</u>

    In its amended complaint, CFI alleges that Mardkha and PowerLine infringed its copyright in a computer program called "RightClick" by copying and incorporating elements of RightClick into a program called "Jagsys." <u>See</u> First Amended Complaint, filed Nov. 14, 2008 (Docket # 32) ("Am. Compl.") ¶¶ 116-20, 147, 150, 154-57. CFI asserts that the Sofer Defendants infringed CFI's RightClick program by allowing defendant Mardkha and his companies, ISM Software and/or Softnet Communication, Inc., to copy the Sofer Defendants' licensed copy of RightClick. <u>Id.</u> ¶¶ 14-18, 21, 131, 137, 139.

In this motion, CFI maintains that the defendants, acting in concert, "willful[ly] and deliberate[ly] destr[oyed] . . . electronic evidence highly relevant and probative of plaintiff's claims of infringement and, in particular, the Sofer Defendants' contributory infringement." Memorandum of Law Submitted in Support of Plaintiff's Motion for Sanctions Against Defendants for their Spoliation of Evidence, filed Oct. 22, 2010 (Docket # 126) ("Pl. Mem.") at 2. CFI claims that this destruction of evidence consisted of: (1) the destruction of email evidence, id. at 9-10; (2) changes to and destruction of elements of the Jagsys program, id. at 6-9; and (3) "removal and replacement of BSI's computer hard drives," id. at 2, 10, 19, 20. To remedy the alleged spoliation, CFI seeks "an order striking the pleadings of each of the defendants and entering judgment against them by default, due to their willful, deliberate and bad faith spoliation of material evidence." Id. at 1. In the alternative, CFI requests an order "granting [CFI] summary judgment on the issue of defendants' liability on Counts I and IV in the First Amended Complaint"; "precluding each of the defendants from offering evidence of non-infringement and/or evidence supporting defendants' affirmative defenses"; "precluding each of the defendants from contesting the plaintiffs' damage calculations"; or "instructing the jury that an adverse inference may be drawn against each of the defendants based upon their destruction of evidence." Id. CFI also seeks its costs and attorneys' fees. Id.

B.    Procedural History

CFI filed its original complaint on June 17, 2008, see Complaint, filed June 17, 2008 (Docket # 1) ("Compl."), and an amended complaint on November 14, 2008, see Am. Compl. On October 22, 2010, following extensive discovery, CFI filed the instant motion for sanctions.[1]

---

    [1] See Notice of Motion, filed Oct. 22, 2010 (Docket # 121); Declaration of Barbara Frederiksen-Cross with Special Expert Report in Support of Plaintiff's Motion for Sanctions

On December 22, 2010, Mardkha filed his opposition to the motion, which included a cross-motion for summary judgment.[2]  On January 6, 2011, the Court issued an order stating that it would treat these papers as Mardkha's opposition to the motion for sanctions to the extent relevant to that motion.  See Order, filed Jan. 6, 2011 (Docket # 143).  On December 29, 2010, the Sofer Defendants filed their opposition papers,[3] and on February 1, 2011, Staszulonek filed his opposition papers.[4]  After CFI filed reply papers,[5] the Court issued an order asking the parties

_____

Against Defendants for Their Spoliation of Evidence, filed Oct. 22, 2010 (Docket # 122) ("Frederiksen-Cross Decl."); Declaration of Steven Mancinelli in Support of Plaintiff's Motion for Sanctions Against Defendants for Their Spoliation of Evidence, filed Oct. 22, 2010 (Docket # 124) ("Mancinelli Decl."); Declaration II of Steven Mancinelli with Appendix of Documents Referenced in the JLI Special Expert Report, filed Oct. 22, 2010 (Docket # 125) ("Mancinelli Decl. II"); Pl. Mem.

[2]  See Notice of Cross-Motion for Summary Judgment, filed Dec. 22, 2010 (Docket # 134); Declaration of Dr. Aleksander Staszulonek, filed Dec. 22, 2010 (Docket # 135) ("Staszulonek Decl."); Declaration of Michael Mardkha, filed Dec. 22, 2010 (Docket # 136) ("Mardkha Decl."); Declaration of Catherine M. Clayton, filed Dec. 22, 2010 (Docket # 137) ("Clayton Decl."); Statement of Material Facts Pursuant to Local Rule 56.1, filed Dec. 22, 2010 (Docket # 138); Memorandum of Law in Opposition to Plaintiff's Motion for Spoliation and in Support of Defendant Michael Mardkha's Cross-Motion for Summary Judgment, filed Dec. 22, 2010 (Docket # 139).

[3]  See Memorandum of Law, filed Dec. 29, 2010 (Docket # 140); Declaration of Lior Sofer, filed Dec. 29, 2010 (Docket # 141) ("Sofer Decl."); Declaration of Eric Weinstein, filed Dec. 29, 2010 (Docket # 142) ("Weinstein Decl.").

[4]  See Defendant's Aleksander Staszulonek d/b/a PowerLine Computers Memorandum of Law Submitted in Opposition to the Plaintiff's Motion for Sanctions Against Defendants for their Spoliation of Evidence, filed Feb. 1, 2011 (Docket # 154) ("Staszulonek Mem."); Defendant's Aleksander Staszulonek d/b/a PowerLine Computers Motion to Reject the "Special Report of Barbara Frederiksen-Cross Addressing Spoliation Issues" Entirely, dated Dec. 23, 2010 (Docket # 175).  By order of this Court, Staszulonek's "[m]otion to [r]eject" the report of CFI's expert, Frederiksen-Cross, was deemed to constitute opposition to the spoliation motion (and not as a motion for affirmative relief).  See Memorandum Endorsed, filed Jan. 24, 2011 (Docket # 152).

[5]  See Reply Declaration of Barbara Frederiksen-Cross in Further Support of Plaintiff's Motion for Sanctions Against Defendants for Their Spoliation of Evidence, filed Feb. 5, 2011

to state their position as to whether CFI had ever received an email that was allegedly destroyed, see Order, filed Mar. 9, 2011 (Docket # 166), and the parties submitted letters in response.[6] Shortly thereafter, with the Court's permission, Staszulonek filed a sur-reply, and plaintiff submitted a sur-sur-reply.[7]

## II.   DISCUSSION

### A.   Legal Principles Relating to Spoliation

Spoliation is "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)); accord Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 288 (S.D.N.Y. 2009).  "Although a district court has broad discretion in crafting a proper sanction for spoliation, . . . the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation

---

(Docket # 155) ("Frederiksen-Cross Reply Decl."); Reply Declaration of Steven Mancinelli in Further Support of Plaintiff's Motion for Sanctions Against Defendants for Their Spoliation of Evidence, filed Feb. 5, 2011 (Docket # 156); Reply Memorandum of Law in Further Support of Plaintiff's Motion for Sanctions for Defendants' Spoliation of Evidence, filed Feb. 5, 2011 (Docket # 157) ("Pl. Reply"); Reply Declaration of Steven Mancinelli Submitting Certificate of Service in Connection with Plaintiff's Spoliation Motion, filed Feb. 8, 2011 (Docket # 158).

[6]   See Letter from Steven Mancinelli to Hon. Gabriel W. Gorenstein, dated Mar. 9, 2011 (Docket # 167) ("Mar. 9, 2011 Letter from Mancinelli"); Letter from Catherine M. Clayton to Hon. Gabriel W. Gorenstein, dated Mar. 11, 2011 (Docket # 168) ("Mar. 11, 2011 Letter from Clayton"); Letter from Eric Weinstein to Hon. Gabriel W. Gorenstein, dated Mar. 14, 2011 (Docket # 169) ("Mar. 14, 2011 Letter from Weinstein").

[7]   See Defendant's Aleksander Staszulonek d/b/a PowerLine Computers Addendum to Memorandum of Law Submitted in Opposition to the Plaintiff's Motion for Sanctions Against Defendants for their Spoliation of Evidence, dated Mar. 17, 2011 (Docket # 177); Letter from Steven Mancinelli to Hon. Gabriel W. Gorenstein, dated Mar. 22, 2011 (Docket # 178).

doctrine." West, 167 F.3d at 779 (citation omitted); accord Adorno v. Port Auth. of N.Y. & N.J., 258 F.R.D. 217, 227-28 (S.D.N.Y. 2009).

A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. Byrnie, 243 F.3d at 109; accord White v. Fuji Photo Film USA, Inc., 2009 WL 1528546, at *1 (S.D.N.Y. June 1, 2009); Adorno, 258 F.R.D. at 227. These elements are (1) that "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed"; (2) that the evidence was "destroyed with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense. Byrnie, 243 F.3d at 107-09 (internal quotation marks and citations omitted) (alteration in original). Any sanction imposed should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." West, 167 F.3d at 779 (internal quotation marks and citations omitted).

We now turn to CFI's claims (1) that the Sofer Defendants deleted relevant email evidence; (2) that all of the defendants destroyed or were complicit in destroying evidence relating to the Jagsys program; and (3) that the Sofer Defendants improperly authorized Mardkha to remove and replace BSI's computer hard drives.

B.    Email Evidence

The record provides evidence that a single email, dated July 31, 2008, was deleted by the Sofer Defendants. CFI's discovery of the deleted email apparently came about because CFI received a document production from Mardkha that included an email from BSI employee Terri Biancardi to Mardkha dated July 31, 2008, which had three attachments. See Mancinelli-Weinstein Email Chain (annexed as Ex. 19 to Mancinelli Decl. II) ("Mancinelli-Weinstein Email

5

Chain") at 7; Mar. 9, 2011 Letter from Mancinelli; Mar. 11, 2011 Letter from Clayton; Mar. 14, 2011 Letter from Weinstein.  This July 31, 2008 email was not, however, included in the production received from the Sofer Defendants.  See Mancinelli-Weinstein Email Chain at 7. CFI argues that because "the Sofer Defendants destroyed some relevant emails" – apparently referring to the single July 31, 2008 email – "there is every reason to believe that they destroyed other equally inculpatory emails."  Pl. Mem. at 10 (emphasis in original).  Little evidence has been provided by either side as to the particular circumstances under which the July 31, 2008 email was deleted.  Lior Sofer states only that one of the office assistants at his business deleted the email despite instructions that had been issued to staff to preserve any email relating to Mardkha or Jagsys.  See Sofer Decl. ¶¶ 14-15.

    We now consider the elements of a spoliation claim to determine if they have been met with respect to the deleted email.

### 1.    The Duty to Preserve Evidence

    All parties agree that the Sofer Defendants had a duty to preserve evidence at the latest in June 2008, when the Sofer Defendants were served with the complaint in this matter.  The email was written after this date and thus had to have been deleted after this date.  Accordingly, at the time of the deletion of the email, the Sofer Defendants were under a duty to preserve it.

### 2.    Culpability

    A party seeking spoliation sanctions must show that "the records were destroyed with a culpable state of mind."  Byrnie, 243 F.3d at 109.  In Byrnie, the Second Circuit held that this prong of the spoliation test could be satisfied by showing that "the records were destroyed knowingly . . . or negligently."  Id.  CFI argues that the destruction of the email evidence

amounts to "gross negligence" because the Sofer Defendants failed to issue a timely written litigation hold and failed to oversee compliance with any litigation hold.  See Pl. Mem. at 18-22.

　Some case law holds categorically that "the failure to implement a litigation hold at the outset of litigation amounts to gross negligence."  Toussie v. Cnty. of Suffolk, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007) (citing Chan v. Triple 8 Palace, 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005)) (additional citation omitted); accord Siani v. State Univ. of N.Y. at Farmingdale, 2010 WL 3170664, at *8 (E.D.N.Y. Aug. 10, 2010); Green, 262 F.R.D. at 290-91; ACORN v. Cnty. of Nassau, 2009 WL 605859, at *4 (E.D.N.Y. Mar. 9, 2009).  There was no such failure by the Sofer defendants, however.  The uncontradicted sworn testimony reflects that BSI received a letter from CFI "[w]ithin approximately one week after the company was served with th[is] lawsuit" informing BSI of its obligation to preserve evidence, and that Lior Sofer's brother, Amit Sofer, thereafter instructed the BSI employees "to preserve (not delete) any materials, including documents, emails and other computer files, relating to Michael Mardkha or Jagsys."  Sofer Decl. ¶ 14

CFI asserts that the Sofer Defendants' counsel did not himself take suitable steps to institute and monitor a litigation hold.  The record reflects that on August 14, 2008, approximately two weeks after he was formally retained as counsel by the Sofer Defendants, counsel spoke with his clients about the duty to preserve evidence, and on August 18, 2008, he sent the Sofer Defendants "a litigation-hold letter, the first of several."  Weinstein Decl. ¶¶ 5-6.  CFI criticizes counsel because he did not advise his clients about instituting a hold sooner, did not "take affirmative steps to monitor compliance" with the hold, failed to consult with appropriate technology personnel regarding the hold, did not implement a "suitable archival protocol," and did not "properly train necessary individuals."  Pl. Mem. at 19-22.  The Court

recognizes that some case law speaks to the obligation of "counsel" to institute a litigation hold. See, e.g., Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); Telecom Int'l Am., Ltd. v. AT & T Corp., 189 F.R.D. 76, 81 (S.D.N.Y. 1999). The Second Circuit, however, places the obligation to preserve evidence on the "party," e.g., Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001), cert. denied, 534 U.S. 891 (2001); Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998), not on counsel. If a party has taken reasonable steps to preserve evidence, its attorney's alleged failures to take additional steps should be of no consequence.

Here, the Court is not persuaded that the Sofer Defendants' efforts to preserve evidence were insufficient. BSI was informed of the obligation to preserve evidence through a letter from plaintiff's attorney that arrived shortly after service of the complaint. See Sofer Decl. ¶ 14. Amit Sofer then gave an oral instruction to BSI employees to preserve evidence. See id. There has been no showing that this oral instruction was incomplete or was inferior to a written instruction for the purpose of informing BSI employees regarding the requirement that evidence be preserved. See generally Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y. 2010) ("[I]n a small enterprise, issuing a written litigation hold may not only be unnecessary, but it could be counterproductive, since such a hold would likely be more general and less tailored to individual records custodians than oral directives could be."). Most importantly, there is no evidence that the destruction of the email was anything but inadvertent or that any other email was deleted. In light of the defendants' efforts, the mere fact that a single email was deleted in contravention of the instruction to preserve does not reflect either bad faith, the intentional destruction of evidence, or gross negligence. See, e.g., Zimmerman v. Poly Prep Country Day Sch., 2011 WL 1429221, at *22 (E.D.N.Y. Apr. 13, 2011) ("[g]ross negligence has

been described as a failure to exercise even that care which a careless person would use")
(internal quotation marks and citation omitted).  And given that BSI instructed its staff to
preserve documents relating to Mardkha and Jagsys, we do not believe that CFI has met its
burden of showing that the deletion of a single email by an employee acting contrary to BSI's
instructions amounted even to simple negligence.  See generally Marlow v. Chesterfield County
School Bd., 2010 WL 4393909, at *3 (E.D.Va. Oct. 28, 2010) (defendant not culpable where a
litigation hold was in place and defendant's employee destroyed handwritten notes because there
was no record evidence that the employee "knowingly destroyed relevant evidence  . . .[ or] that
she made a conscious decision to destroy [the evidence] because of [plaintiff's]  forthcoming
lawsuit").  Accordingly, we do not believe that the plaintiff has sustained its burden of proving
that the culpability element of a spoliation claim has been met.

       3.   <u>Relevance</u>

As noted, the culpability issue turns on our evaluation of BSI's efforts to preserve
evidence –  efforts that arguably could have been improved.  But even if we found some fault on
the Sofer Defendants' part, it would at most amount to negligence, and no sanction would be
appropriate because the CFI has not proven the applicability of the third factor in the spoliation
test: that the deleted email was relevant evidence that would have been favorable to CFI.  See
Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002).  With
respect to this factor, the Court must determine

> "whether there is any likelihood that the destroyed evidence would have been of
> the nature alleged by the party affected by its destruction."  Kronisch, 150 F.3d at
> 127.  The burden falls on the "prejudiced party" to produce "some evidence
> suggesting that a document or documents relevant to substantiating his claim
> would have been included among the destroyed files."  Id. at 128.

Byrnie, 243 F.3d at 108.  In this context, the term "relevance" means "something more than

sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."  Residential

Funding Corp., 306 F.3d at 108-09 (internal quotation marks and footnote omitted).  However,

courts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof

regarding the likely contents of the destroyed [or unavailable] evidence," because doing so

"would subvert the . . . purposes of the adverse inference, and would allow parties who have . . .

destroyed evidence to profit from that destruction."  Kronisch, 150 F.3d at 128.

 Relevance may be established in two ways.  "First, it may be inferred if the spoliator is

shown to have a sufficiently culpable state of mind."  Chan, 2005 WL 1925579, at *8.  Where

the moving party "adduces evidence that its opponent destroyed potential evidence (or otherwise

rendered it unavailable) in bad faith or through gross negligence (satisfying the 'culpable state of

mind' factor), that same evidence of the opponent's state of mind will frequently also be

sufficient to permit a jury to conclude that the missing evidence is favorable to the party

(satisfying the 'relevance' factor)."  Residential Funding Corp., 306 F.3d at 109.  As we have

noted, here there has been no showing of bad faith or gross negligence with respect to the

deletion of the email.  Accordingly, we cannot infer that the deleted email was relevant based on

the Sofer Defendants' state of mind alone.

 CFI may also demonstrate relevance by submitting evidence tending to demonstrate that

the deleted email would have been favorable to it.  See id. at 109; Golia v. Leslie Fay Co., 2003

WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (plaintiffs established that the missing

"documents were relevant, by proffering sufficient evidence from which a jury could conclude

that the documents contained evidence that would have been favorable to their claims").

Counsel for CFI, however, concedes that he obtained a copy of the deleted email when it was

produced by the Sofer Defendants' co-defendant, Mardkha, who was the addressee of the email at issue.  See Mar. 9, 2011 Letter from Mancinelli.  While the attachments to the email were withheld in Mardkha's production on privilege grounds, both Mardkha and the Sofer Defendants' attorney confirm that the attachments concern possible terms of settlement and the parties' defense of this action.  See Mar. 11, 2011 Letter from Clayton; Mar. 14, 2011 Letter from Weinstein.  Thus, there is nothing to suggest that the deleted email or its attachments would have constituted evidence favorable to plaintiff.  Accordingly, sanctions for the deletion of the email are not warranted.

      C.     Evidence Relating to the Jagsys Program

      CFI also seeks sanctions on the ground that defendants destroyed certain computer files relating to the Jagsys program.  The defendants produced 53 installation files for the Jagsys program, the first version of which dates from several months before the lawsuit.  CFI finds them wanting, however, because they "do not account for every version of Jagsys known to have been used by BSI" and that they do not provide information on "what files were added, modified, or removed from the operational version, or 'runtime environment,' post-installation."  Pl. Mem. at 6-7.  The crux of CFI's complaint is that the defendants should have preserved the "runtime environment" and associated files or data (such as "report files" or metadata) beginning with versions dating from June 2008.  It argues that the defendants were "obligated to preserve their runtime environments . . . for every version installed on any of their computers and/or used by them or their employees since the inception of this lawsuit."  Id. at 7.  In other words, plaintiff contends that the defendants' failure to preserve a particular manifestation of the Jagsys program – specifically, the runtime environments and associated files – entitles them to sanctions.

11

CFI's expert, Barbara Frederiksen-Cross, defines the "runtime environment" as "the version of the software that has been installed and is actually running on the computer," which includes "both the files that were automatically created during the installation process and any additional files that were manually added, removed or modified after the installation process was completed."  Special Report of Barbara Frederiksen-Cross Addressing Spoliation Issues (annexed as Ex. 1 to Frederiksen-Cross Decl.) ("Frederiksen-Cross Special Report") ¶ 8 n.8. Frederiksen-Cross concedes that the installation files defendants have produced "are sufficient to demonstrate the existence of numerous versions of Jagsys," but she asserts that the installation files are "insufficient to identify the versions of Jagsys that were used by Beny Sofer since the start of this lawsuit," id. ¶ 16, and insufficient to identify Jagsys modifications "made directly on the Beny Sofer computer system," as opposed to those "provided as part of an installation file," id. ¶ 10.

CFI's argument that the defendants should have preserved the runtime environments must be viewed in light of two important facts.  First, the defendants created various versions of Jagsys because, for many months both before and after the lawsuit was filed, defendants were making changes to the Jagsys program as part of their effort to make the program work on the BSI computers.  See Sofer Decl. ¶¶ 8, 12; Mardkha Decl. ¶ 14; Staszulonek Decl. ¶¶ 5-7.  These efforts included numerous fixes to the Jagsys program.  Thus, the fact that defendants were working to change and create new versions of Jagsys after the complaint was filed does not reflect any inherently improper conduct.

Second, it is undisputed that the defendants have supplied to plaintiffs in discovery 53 installation files for the Jagsys program, dating from April 2, 2008 through December 17, 2008 – in other words, from more than two months before the commencement of the lawsuit until the

time defendants abandoned their efforts to update Jagsys.  See Staszulonek Decl. ¶ 9; Mardkha

Decl. ¶ 19; Frederiksen-Cross Special Report ¶ 5 n.5.[8]  These installation files allow the user to

install the Jagsys program onto a computer and to run the Jagsys program as it existed on the

date of the installation file, which produces the "runtime environment" as of that date.  See

Staszulonek Decl. ¶ 10.  As a result, the defendants contend that they "have produced installation

files sufficient to enable Plaintiff to examine the runtime versions of Jagsys that were used by

BSI from April 2, 2008 through December 17, 2008," and "[t]here were no later versions of

Jagsys installed on BSI's computers."  Id. ¶ 11.

    As for the source code for the Jagsys program, the source code was only in the

possession of Staszulonek, not Mardkha or the Sofer Defendants, and Staszulonek produced the

versions he had, which date from August 5, 2008.  Id. ¶¶ 13-15.  In any event, the source code

existing as of the date of any of the 53 installation files can be decompiled from any of these

installation files.  Id. ¶ 16.  Thus, source codes from versions of Jagsys beginning prior to the

lawsuit are available to plaintiff.

    The main factual dispute between the parties centers on whether using the installation

files to create a runtime environment discloses every single change that the defendants made to

the Jagsys program during the period they were modifying Jagsys on the BSI computers after the

complaint was filed.  Frederiksen-Cross rejects Staszulonek's opinion that installation files

---

[8]  The plaintiff goes to great lengths to analyze the Sofer Defendants' production
independent of the production of the other defendants.  See Frederiksen-Cross Special Report at
¶¶ 7-15.  But the Court does not find it significant that the Sofer Defendants preserved only a
subset of the 53 installation files inasmuch as Mardkha and PowerLine preserved all 53 versions;
the Sofer Defendants relied on Mardkha and PowerLine to preserve the pre-litigation version of
the program, see Sofer Decl. ¶ 16; and the parties are co-defendants working together in defense
of this lawsuit, despite any cross-claims among them.  In addition, Staszulonek points out that
some files were installed "remotely or onsite from a laptop computer."  Staszulonek Decl. ¶ 7.

disclose every possible change that was made to the Jagsys program.  See, e.g., Frederiksen-Cross Special Report ¶ 16.  Frederiksen-Cross states that "comparisons of the runtime environments demonstrate that the Jagsys runtime environments can be modified in an infinite number of ways subsequent to the installation process," and thus, "where a runtime environment ha[s] been modified post-installation and outside the installation process, it would not be possible for the installation file to recreate that corresponding runtime environment as it existed in its modified state."  Frederiksen-Cross Reply Decl. ¶ 25.  Staszulonek asserts that any changes to the Jagsys program would be reflected in the new version of the installation file created, and that if it were not so reflected, the change would be overwritten and lost.  Staszulonek Decl. ¶ 6.  Thus, he asserts that "every change made to the Jagsys program from April 2, 2008 through December 17, 2008 is reflected in the fifty-three (53) installation files for the program," which have been produced, and that the installation files "also establish the timing of those changes," id. ¶ 9, with a margin of error of one or two business days, id. ¶ 12.  In addition, Staszulonek contends that "[t]he method of creating archives requested by Plaintiff, i.e. preserving runtime files, is not proper procedure and would not have been an effective way of transmitting evidence to Plaintiff."  Id. ¶ 17.  He states that "by using the installation files produced by defendants, Plaintiff ha[s] the ability to restore the runtime environment as it was, and to avoid the technical problems that would undoubtedly have arisen if they were only provided runtime versions of the program."  Id.

With this factual background, we now examine whether plaintiff has met its burden of proving its entitlement to sanctions for spoliation.

1.      The Duty to Preserve Evidence

As previously noted, a party seeking sanctions for destroyed evidence must show that "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed." Kronisch, 150 F.3d at 126.  In general, "[t]he obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  Fujitsu Ltd., 247 F.3d at 436 (citation omitted); accord R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 23, adopted by 271, F.R.D. 55 (S.D.N.Y. 2010); Scalera v. Electrograph Sys., Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009); Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008).  This obligation to preserve evidence arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch, 150 F.3d at 126 (citations omitted).

CFI argues that the duty to preserve in this case "arose the minute [defendants] started making literal copies of RightClick materials."  Pl. Mem. at 13.  Given that the defendants deny they committed any act of copyright infringement, plaintiff's argument boils down to the proposition that where a plaintiff alleges that a defendant committed a tortious act, the defendant has a duty to preserve evidence as of the time the plaintiff later alleges the tortious act was committed – even in the absence of any evidence that the defendant believed it committed a tortious act or otherwise anticipated future litigation.  The only case cited in support of this argument, Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), contains no such holding but rather notes that in that particular case, "it appear[ed] that almost everyone [employed by the defendant who was] associated with [the plaintiff] recognized the possibility

15

that [she] might sue" prior to the lawsuit being filed.  Id.  No similar showing has been made

here as to any period prior to the filing of the lawsuit.  Accordingly, the Court rejects CFI's

argument.

In the alternative, CFI argues that the duty arose on November 6, 2007, when Lior Sofer

was forwarded an email from Mardkha stating that a certain problem with the Jagsys program

"was inherited from [RightClick]."  Pl. Mem. at 14 (internal quotation marks and citation

omitted).  Under plaintiff's view, Sofer was supposed to divine from this email that he faced a

potential copyright suit and that this suit would require him to preserve all evidence relating to

alleged copying of the RightClick program.  This argument is similarly rejected because

Mardkha's email would not put the Sofer Defendants on notice that they faced a potential

copyright claim.  Mardkha denies any copyright violations and it is undisputed that Sofer

"kn[e]w nothing about programming, or writing, or encrypting code."  Sofer Decl. ¶ 4; see also

id. ¶ 11 ("At no time until this lawsuit did CFI or anyone else alert [the Sofer Defendants] to the

possibility of copyright infringement.").  A problem could have been "inherited" from

RightClick for innocent reasons, such as a defect in a non-copyrightable file created when

RightClick was being used.

Accordingly, the Court concludes that the defendants had an obligation to preserve

relevant evidence relating to the Jagsys program beginning in June 2008, after they were served

with the complaint.  The defendants do not dispute that they had a preservation obligation as of

this time period.  We next turn to the question of whether the defendants acted "with a culpable

state of mind," Residential Funding Corp., 306 F.3d at 107, in failing to preserve the runtime

environments as well as any other changes they made in the course of modifying the program.

16

2.     Culpability

The responsibility to preserve evidence is grounded in the concept of reasonableness. Thus, case law notes that a party has a duty to preserve what it knows, or "reasonably should know," is relevant in an action and that is "reasonably likely to be requested during discovery." Mahar v. U.S. Xpress Enters., Inc., 688 F. Supp. 2d 95, 112-13 (N.D.N.Y. 2010) (internal quotation marks and citations omitted).  Accordingly, our focus is whether the defendants acted reasonably in their efforts to preserve the changes they were making to the Jagsys program.  We begin by emphasizing that, unlike most reported court decisions involving a claim of spoliation, this case does not involve the alleged spoliation of material that was in existence at the time the lawsuit was filed.  Rather, it is material that was created after the lawsuit was filed: specifically, computer files or data arising from the ongoing efforts by the defendants to customize the Jagsys program on BSI's computers.

Notably, CFI does not contend on this motion that the post-litigation changes that the defendants made to Jagsys might show additional copying of the RightClick program.  In fact, it contends the opposite.  It contends that during this period the defendants were making changes that deleted computer code or files that copied the RightClick program.  See, e.g., Frederiksen-Cross Special Report ¶ 48; Frederiksen-Cross Reply Decl. ¶ 16.  But any such deletions could not detract from plaintiff's ability to use the prior versions of the Jagsys program to prove its case of infringement.  Indeed, beginning with the original complaint filed in June 2008, plaintiff alleged that it had obtained a copy of the Jagsys program in March 2008, see Compl. ¶¶ 85-86, and the complaint explains in detail its conclusion that Jagsys copied large sections of the RightClick program, id. ¶¶ 88-99.  Given this background, not only did defendants have little reason to commit additional alleged infringements on the RightClick program, they also had

little motive to destroy evidence of their alleged infringement.  As far as they knew, the plaintiff already had a complete copy of Jagsys and thus had the evidence it needed to prove infringement.

Turning to the culpability question, CFI argues that BSI's bad faith is demonstrated by the fact that its attorney informed "Mardkha not to change programs currently existing on BSI's computers," Pl. Mem. at 18 (internal quotation marks and citation omitted), but that the defendants went ahead and did so anyway.  Indeed, the record reflects that the Sofer Defendants were aware that they needed to preserve a copy of the Jagsys program as it existed at the time of the lawsuit and allowed Mardkha to make changes only on the condition that "he preserve[] what was there before on [BSI's] server."  Sofer Decl. ¶ 16.  CFI's argument, however, begs the question of whether BSI or Mardkha had reason to believe that the runtime environment and associated files should be preserved in view of the fact that the defendants were preserving each of the installation files relating to the Jagsys program.  It is this issue that is at the heart of the culpability question.  Staszulonek opines that preservation of the runtime environment – the method of preservation that CFI insists upon – would in fact have led to the "destruction of evidence" because when "transferred to another computer," the zip file of the runtime environment of Jagsys might not have been able to "run."  See Staszulonek Mem. at 9.  CFI does not address this issue but focuses instead on its contention that it cannot be known for sure that the successive generations of installation files reflect every possible modification that the defendants made between the dates each version of an installation file was saved.  See Frederiksen-Cross Reply Decl. ¶¶ 11-14.  CFI's expert concludes that "it is not forensically possible to verify that any change, addition, or deletion to the Beny Sofer runtime environment was ever incorporated into a subsequent Jagsys installation file unless the Beny Sofer runtime

environment in which those changes, additions, or deletions occurred was preserved as a baseline so that it could be forensically examined and compared to the Jagsys installation files produced by SoftNet." Id. ¶ 14.

The Court does not find it necessary to resolve the question of whether each and every change to the Jagsys program is reflected in the installation files.  It is common ground that the installation files allow a knowledgeable person to produce the underlying source code and that the installation files reflect any changes to the program that were made as of the date that the installation file was created.  And the defendants have put forth plausible reasons for why they thought the installation files were sufficient to preserve all versions of the Jagsys program.  As a result, the Court has no trouble concluding that the defendants' decision to preserve the numerous installation files – and not to preserve the "runtime environment" along with each and every change at the moment those changes were made – does not reflect a culpable state of mind.  Instead, it reflects an honest and reasonable belief on the part of the defendants that they were taking the proper steps to preserve evidence in this case.  Given that the complaint alleged past acts of infringement, and given that BSI needed to customize the Jagsys program for its use, there was no reason for defendants to believe that it was necessary to document each and every post-litigation modification to the program – including a change that might have been deleted minutes later – that they undertook as part of their work on Jagsys.  Moreover, ample exemplars of such changes were preserved when defendants saved successive generations of the installation files.

CFI argues that its request for "the Jagsys program as it was actually used and operating on the BSI computers as of June 2008," meant, "in layman's terms[,] . . . the BSI runtime environment."  Pl. Reply at 3 (internal quotation marks and citations omitted).  But CFI never

once used the term "runtime environment" in its document requests.  And in follow-up letters regarding discovery, it made repeated reference to obtaining discovery of the "installation" of the Jagsys program, but never to "runtime" versions.  <u>See</u> Plaintiff's First Request for Production of Documents and Things to Defendants Beny Sofer, Inc., and Beny Sofer (annexed as Ex. 7 to Mancinelli Decl.) at 11 ¶¶ 2, 5; <u>id.</u> at 12 ¶ 16; <u>id.</u> at 15 ¶ 43; Plaintiff's Second Request for Production of Documents and Things and First Set of Interrogatories to Defendants Beny Sofer, Inc., and Beny Sofer (annexed as Ex. 8 to Mancinelli Decl.) at 11 ¶¶ 1-2; Emails Between Weinstein and Mancinelli re: Sofer Document Production Issues (annexed as Ex. 9 to Mancinelli Decl.) at 5; Emails Between Weinstein and Mancinelli re: CFI v Softnet - Outstanding Discovery from Sofer Defendants (annexed as Ex. 11 to Mancinelli Decl.) at 1, 5; Weinstein Decl. ¶ 11. Plaintiff has not pointed to any standard procedure recognized in the computer field under which runtime environments are expected to be preserved.

Finally, plaintiff could have obviated at least part of the problem had it promptly complied with Judge McMahon's Rules Governing Electronic Discovery.  Paragraph 6 of those rules required the parties to "negotiate an agreement that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents."  The parties could have discussed, as part of the required negotiation, the defendants' ongoing efforts to customize the Jagsys program and what particular files should be preserved.

In sum, the Court cannot say that any of the defendants acted culpably in their efforts to preserve the computer files in the manner they did.  Accordingly, CFI has not made out a claim for sanctions based on the alleged spoliation of this evidence.

3.    Relevance

While the above conclusion disposes of the claim for sanctions relating to the Jagsys

program, the Court notes that CFI's claim for spoliation sanctions would fail in any event

because it has not met the "relevance" prong of the spoliation analysis.

Even if it could be said that the defendants acted with a culpable state of mind, plaintiff

has at most shown that the defendants acted negligently in failing to preserve the runtime

environment, given their good faith belief that their preservation efforts were sufficient and the

affirmative efforts they made to preserve the multiple installation files.  "[W]here the party

destroyed evidence due to ordinary negligence [as opposed to bad faith], [t]he burden falls on the

prejudiced party to produce some evidence suggesting that a document or documents relevant to

substantiating his claim would have been included among the destroyed files."  Gutman v. Klein,

2008 WL 4682208, at *7 (E.D.N.Y. Oct. 15, 2008) (internal quotation marks and citations

omitted).  Here, CFI makes numerous allegations of infringement based simply on the version of

the installation files that they already have.  Indeed, plaintiff's expert, Frederiksen-Cross,

provides an affidavit explaining her view that the versions of the Jagsys program already

obtained show that Jagsys improperly copied RightClick software.  See Expert Report of Barbara

Frederiksen-Cross (annexed as Ex. 45 to Mancinelli Decl.); see also Frederiksen-Cross Reply

Decl. ¶¶ 33-38 (describing in detail the evidence of alleged infringement derivable from existing

versions of Jagsys).  And plaintiff has not denied that the 53 preserved versions of Jagsys allow

it to see numerous changes that the defendants made to the program in their efforts to customize

it for BSI after suit was filed.

In its papers, plaintiff never suggests any basis on which to believe that the runtime

environments and associated files might have shown additional infringement of the RightClick

program.  Instead, it suggests that they would show efforts to make Jagsys less like RightClick.

Plaintiff does not explain, however, why each of the myriad changes during this period in aid of

this alleged effort is likely relevant to plaintiff's claim that Jagsys infringed the RightClick

program.  In other words, CFI has not explained why proof of each of the incremental changes

during the period after the complaint was filed would have allowed it to show infringement in a

way that is at all materially different from the proof already available to it.  Thus, plaintiff has

not met its burden of showing that anything lost by the failure to preserve the runtime

environments is sufficiently relevant to the proof of their claims in this case.  In the absence of a

showing of relevance, the claim for spoliation sanctions must fail.  See Orbit One Commc'ns,

Inc., 271 F.R.D. at 441 ("sanctions [not] warranted by a mere showing that a party's preservation

efforts were inadequate").[9]

     D.    The Removal and Replacement of BSI's Computer Hard Drives

CFI argues that it is entitled to sanctions because the Sofer Defendants' authorized

Mardkha to remove and replace their network server hard drives after the commencement of this

litigation.  See Pl. Mem. at 2, 19, 20, 22.  The defendants have submitted evidence, however, that

the "[t]he only hard drives that [Mardkha] ever removed or replaced from BSI's computer

system during this litigation were hard drives on [BSI's] data server" that contained "BSI's

business documents and data[, which have] nothing to do with Jagsys."  Mardkha Decl. ¶ 15;

accord Mardkha Deposition (annexed as Ex. K to Clayton Decl.) at 245 (hard drives were

---

    [9] As already noted, the concept of "relevance" in the context of a spoliation claim means
"something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of
Evidence."  Residential Funding Corp., 306 F.3d at 108-09 (internal quotation marks and
footnote omitted).   Thus, while this Opinion and Order opines on issues relating to relevance for
purposes of deciding whether plaintiff is entitled to an award of sanctions, nothing herein should
be construed as ruling on the admissibility of any evidence plaintiff may wish to offer at trial.

removed from BSI's "data server" not the "Jagsys server").  There is no evidence in the record

contradicting this assertion.  Therefore, sanctions are not appropriate because a discovery

sanction cannot be based on a failure to preserve irrelevant evidence.  See, e.g., Fujitsu, 247 F.3d

at 436 (requiring preservation of "relevant" evidence); see also R.F.M.A.S., Inc., 271 F.R.D. at

23-24 (obligation to preserve applies only to evidence that "the party knows or reasonably

should know is relevant to claims or defenses in the action, is reasonably calculated to lead to the

discovery of admissible evidence, or is reasonably likely to be requested during discovery").

III.   CONCLUSION

     For the foregoing reasons, CFI's motion for sanctions (Docket # 121) is denied.

Plaintiff's request for attorneys' fees is similarly denied.


Dated: May 11, 2011
       New York, New York

                                            _____
                                            GABRIEL W. GORENSTEIN
                                            United States Magistrate Judge

Copies sent to:

Steven Mancinelli
Codispoti & Mancinelli, LLP
111 John Street, Suite 800
New York, NY 10038

Catherine Marie Clayton
Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

Eric Weinstein
Feldman Weinstein, LLP
420 Lexington Ave., Ste. 2620
New York, NY 10170

Aleksander Staszulonek
Ul. Stzreleckiego 32
44-105 Gliwice
POLAND

removed from BSI's "data server" not the "Jagsys server").  There is no evidence in the record

contradicting this assertion.  Therefore, sanctions are not appropriate because a discovery

sanction cannot be based on a failure to preserve irrelevant evidence.  See, e.g., Fujitsu, 247 F.3d

at 436 (requiring preservation of "relevant" evidence); see also R.F.M.A.S., Inc., 271 F.R.D. at

23-24 (obligation to preserve applies only to evidence that "the party knows or reasonably

should know is relevant to claims or defenses in the action, is reasonably calculated to lead to the

discovery of admissible evidence, or is reasonably likely to be requested during discovery").

III.   CONCLUSION

For the foregoing reasons, CFI's motion for sanctions (Docket # 121) is denied.

Plaintiff's request for attorneys' fees is similarly denied.

Dated:  May 11, 2011
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Steven Mancinelli
Codispoti & Mancinelli, LLP
111 John Street, Suite 800
New York, NY 10038

Catherine Marie Clayton
Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

Eric Weinstein
Feldman Weinstein, LLP
420 Lexington Ave., Ste. 2620
New York, NY 10170

23